## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 14-cv-62369-BLOOM/Valle

**ARCTIC CAT INC.,**

     Plaintiff,

v.

**BOMBARDIER RECREATIONAL
PRODUCTS, INC., and BRP U.S. Inc.,**

     Defendants.

_____/

### <u>Order Denying Judgment as a Matter of Law</u>

**THIS CAUSE** is before the Court upon Defendants Bombardier Recreation Products, Inc. and BRP U.S. Inc.'s (hereinafter, referred to together as "BRP" or "Defendant") Motion for Judgement as a Matter of Law (the "Motion"), pursuant to Federal Rule of Civil Procedure 50(a), made in open Court on May 25, 2016, at the close of Plaintiff Arctic Cat Inc.'s ("Plaintiff," "Arctic Cat," or "AC") case-in-chief and prior to the Court's submission of the matter to the jury. *See* ECF No. [145] (trial minutes). After careful consideration of the parties' oral argument on the Motion, the evidence presented at trial, the record, and the applicable law, the Motion is denied.

### I.  Background

Plaintiff brought the instant suit against BRP on October 16, 2014, for infringement on Arctic Cat's patents, including U.S. Patent Nos. 6,793,545 ("the '545 Patent") and 6,568,969 ("the '969 Patent," together with the '545 Patent, the "Patents" or "Patents at Issue"). AC filed the Patents at Issue to protect its development of "a novel and effective thrust mechanism to provide riders with temporary 'steerable thrust' in conditions where a rider turns the steering

mechanism of the [personal watercraft 'PWC'] and the throttle is returned to the idle position . . . which allows for a safer and more intuitive riding experience."   ECF No. [36] (Amended Complaint) at 3.  Specifically, Plaintiff asserts that BRP infringed upon various claims contained within the Patents at Issue through the sale of certain models of PWCs under the name Sea-Doo, beginning in 2009, which incorporated Off-Throttle Assisted Steering ("OTAS").  OTAS is a technology that "maintains or increases engine speed to approximately 3,000 RPM for a temporary period to provide the rider with steerable thrust."  *Id.* at 4.

After this action proceeded through discovery, on May 2, 2016, the Court granted in part and denied in part BRP's Motion for Summary Judgment, ECF No. [78], precluding AC from recovering damages for any alleged infringement of the '969 Patent after May 27, 2011, the date of the '969 Patent's expiration.  ECF No. [119] ("Order on Summary Judgment").  Accordingly, this case proceeded to trial on all other issues relating to infringement, validity, and damages, beginning on May 16, 2016, *see* ECF No. [138] (trial minutes).  The Motion for judgment as a matter of law timely and properly renews BRP's arguments from their summary judgment motion as to validity, infringement, laches, and damages.  Additionally, BRP now seeks judgment as a matter of law on the issue of willfulness.

## II.  Review Standard

In this patent case, this Court applies the law of the Eleventh Circuit with respect to evidentiary issues and the standard applicable to a motion for judgment as a matter of law.  See *Retractable Tech., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1302 (Fed. Cir. 2011) ("In reviewing evidentiary rulings and denials of motions for JMOL, we apply the law of the regional circuit."); *see Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1218 (Fed. Cir. 2006) (applying regional circuit law when reviewing a *Daubert* ruling).  Under Rule 50(a), "[i]f a party

has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party." Fed. R. Civ. P. 50(a). The Eleventh Circuit has instructed that Rule 50 motions "should be granted . . . when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010); see *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) (internal quotation and formatting removed) ("Under Rule 50, a party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.").

When reviewing a motion under Rule 50, the Court is obligated to review the evidence in the light most favorable to the non-moving party. *Hanes v. Greyhound Lines, Inc.*, 316 F. App'x 841, 842 (11th Cir. 2008) (citing *Daniel v. City of Tampa*, 38 F.3d 546, 549 (11th Cir. 1994)); *Sherrod v. Palm Beach Cnty. Sch. Dist.*, 424 F. Supp. 2d 1341, 1344 (S.D. Fla. 2006) ("[The Court] must view the evidence in a light most favorable to the plaintiff, and must not weigh the evidence nor assess witness credibility.") (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000))). Thus, as the Eleventh Circuit has noted, "[w]here there is no change in the evidence, the same evidentiary dispute that got the plaintiff past a summary judgment motion asserting [a particular argument] will usually get that plaintiff past a Rule 50(a) motion asserting the [same argument], although the district court is free to change its mind." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002) (citing *Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000)).

### III. Discussion

Pursuant to Fed. R. Civ. P. 50(a), BRP requests judgment as a matter of law in its favor. The Motion makes five primary arguments as to infringement, willfulness, laches, damages and marking. Plaintiff opposes the sought-after relief, arguing that Arctic Cat has presented enough evidence at trial for a reasonable jury to have a legally sufficient basis to find in its favor. The Court addresses each argument in turn.

### A. Infringement

Defendant first argues that Arctic Cat has not presented legally sufficient evidence from which a reasonable jury could conclude that the accused products infringe any asserted claims. Plaintiff, of course, disagrees. Nevertheless, the parties' arguments on infringement amount to disputes relating to a proper application of the claim language to the Accused Products. As the Court held on summary judgment, the application of referenced terms of art, such as "immediately," "thrust at a level," and "rotationally independent," pursuant to the Court's claim constructions, to the Accused Products are questions of fact that should be left to the jury. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ("The patented invention as indicated by the language of the claims must first be defined (a question of law), and then the trier of fact must judge whether the claims cover the accused device (a question of fact).") (quoting *Envirotech Corp v. AI George, Inc.*, 730 F.2d 753, 758 (Fed. Cir. 1984)).

The Court finds that Arctic Cat has presented sufficient evidence from which a reasonably jury could find that the Sea-Doo product infringes the asserted claims. Contrasting expert testimony has been presented to the jury on the issue of the term "immediately" and its application. Among other examples, Dr. Bernard Cuzzillo has opined from the stand based on his

personal review and analysis of the BRP personal watercraft, on-water testing with Mr. Paul Kamen, as well as his review and analysis of the Bosch function sheet and other documents that the BRP personal watercraft do, in fact, infringe each asserted claim of the '545 and the '969 patent.  Likewise, Dr. Cuzzillo, Mr. Kamen, and Mr. Robert Taylor, spoke to variation in the amount of thrust during a single activation of a controlled-thrust steering system.  Dr. Cuzzillo testified that the OTAS magnets and the OTAS switch are, in fact, rotationally independent because they do not rotate together.  Mr. Taylor, likewise, testified that, as specifically described in Figure 13 of the '545 and '969 patents, what is happening is that the magnets are rotating while the switch is fixed, just like in the BRP OTAS system.  As to the method claims, Arctic Cat has entered into evidence a test video of Mr. Kamen driving BRP Sea-Doo personal watercraft while enabling the OTAS feature multiple times.  *See Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012) ("Direct infringement of a method claim can be based on even one instance of the claimed method being performed.  A patentee need not always have direct evidence of infringement, as infringement may be established by circumstantial evidence.  However, Mirror Worlds, as the patentee here, has to show that Apple performed all of the steps in the claimed methods.") (citation omitted).  Arctic Cat has clearly met its burden under Rule 50(a) to allow the issue of infringement to proceed to the jury for their determination.  Accordingly, BRP's Motion is denied as to infringement.

### B.  Willfulness

Next, BRP argues that Arctic Cat has failed to present evidence that it acted objectively reckless, as required by the first objective prong of the *Seagate* test for willfulness.  Pursuant to this prong, Arctic Cat must demonstrate by clear and convincing evidence that BRP acted despite an objectively high likelihood that BRP's actions infringed a valid and enforceable patent, *i.e.*,

whether BRP's reliance on a valid defense to infringement was not objectively reckless.  "The civil law generally calls a person reckless who acts . . . in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

Although an infringer need not prove that it sought the advice of competent counsel in order to defeat a claim of willful infringement, *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1056 (Fed. Cir. 1994) ("Possession of a favorable opinion of counsel is not essential to avoid a willfulness determination"), whether or not an alleged infringer sought the advice of counsel is "crucial to the [willfulness] analysis."  *Seagate*, 497 F.3d at 1369.  Alternatively, "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent."  *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 F. App'x 284, 291 (Fed. Cir. 2008).  The question for the Court in this regard is "whether an accused infringer's reliance on a particular issue or defense is reasonable."  *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011); *see WesternGeco L.L.C. v. ION Geophysical Corp.*, 791 F.3d 1340, 1354 (Fed. Cir. 2015) (citing *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) ("[U]nreasonableness, not a lack of success, determines whether enhanced damages are awarded.").  "If the accused infringer's position is susceptible to a reasonable conclusion of no infringement, the first prong of *Seagate* cannot be met."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310-11 (Fed. Cir. 2011) ("Uniloc has failed to meet the threshold objective prong of *Seagate*.  Uniloc has not presented any evidence at trial or on appeal showing why Microsoft, at the time it began infringement, could not have reasonably determined that [its products] did not meet the . . . limitations [of the

patent at issue]. Specifically, infringement of the [patent] limitation is a complicated issue.");

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 668-69 (M.D. Fla. 2012), *aff'd*, 725 F.3d 1377 (Fed. Cir. 2013) ("Rembrandt has not presented a legally sufficient evidentiary basis for a reasonable jury to find by clear and convincing evidence that JJVC acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. JJVC presented cogent and reasonable arguments that its products did not meet several limitations [of the patent at issue] . . . . Moreover, the Court finds that JJVC's reliance on its claim construction arguments and indefiniteness defenses was not objectively reckless."); *see Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1377-78 (Fed. Cir. 2012) (affirming district court decision finding that defendant's acts were not objectively reckless, based on: "(1) the language of the '072 patent, which 'leaves significant doubt as to the patent's validity'; (2) J & L's 'compelling non-infringement and invalidity arguments'; (3) the PTO's 'rejection of the reissue application based on it being 'structurally indistinguishable' from the Gillespie [prior art patent]'; and (4) the fact that the meaning of certain key claim terms in the '072 patent only became clear through AFT's arguments during reissue prosecution.").

Under the objective prong, the answer to whether an accused infringer's reliance on a particular issue or defense is reasonable is a question for the court when the resolution of that particular issue or defense is a matter of law. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) (citing *Cohesive Tech., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008)) (applying the clearly erroneous standard of review to the district court's willful infringement determination under the objective prong based on the closeness of the claim construction inquiry). Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, since proving the

7

objective prong is a predicate to consideration of the subjective prong. *Id.* When the resolution of a particular issue or defense is a factual matter, however, whether reliance on that issue or defense was reasonable under the objective prong is properly considered by the jury. *Id.* at 1236-37. In circumstances, then, where separate issues of fact and law are presented by an alleged infringer as defenses to willful infringement, the objective recklessness inquiry may require analysis by both the court and the jury. *Id.* at 1237 ("For instance, in this case, certain components of the case were before the jury, while others were not. The court decided issues of claim construction and inequitable conduct, neither of which was before the jury. Thus, while the jury was in a position to consider how the infringement case weighed in the objective prong analysis, on other components – such as claim construction – the objective prong question was properly considered by the court.").

The Southern District case of *Creative Compounds, LLC v. Starmark Laboratories, Inc.*, No. 07-22814-CIV, 2010 WL 2757196, *5 (S.D. Fla. 2010) is instructive. In that case, the district court held that Creative sought and reasonably relied on the advice of competent and objective patent counsel, who concluded that Creative's work substantially predated the work of Starmark's predecessor and would thus render the subject patent – were it to issue – unenforceable. *Id.* Furthermore, Creative sought advice of counsel *before* it engaged in any potentially infringing activities, as the exculpatory letter was dated August 25, 2006 – approximately one month prior to the issuance of the patent. *Id.*

Here, testimony has been presented conclusively demonstrating that BRP's agent, Mr. Goudrault of BRP's IP Department, knew about the subject patents before they issued. *See State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it."). Mr. Daujenais and Mr.

Goudrault confirmed that fact.  Indeed, Mr. Goudrault stated at trial that he made a note in his file to reexamine the patent after its issuance.  *See id.*  Furthermore, Mr. Goudrault only analysis of the patent – on which BRP exclusively relied – consisted of one conclusory sentence on a page of handwritten notes.  The witness, himself, testified that he would not provide such an opinion to one of his clients today.  Even if a larger file existed that has gone missing in the years since he conducted his analysis, importantly, Mr. Goudrault is not an attorney.  Thus, whatever the quality of his work, BRP cannot legally rely on him to establish the advice of counsel defense.  So, despite specifically noting the relevance of Arctic Cat's patent application, BRP chose not to seek advice of qualified and competent counsel until much later, after unsuccessfully attempting to purchase Arctic Cat's patents through a third party.  In *Creative*, the defendant sought advice of counsel before it engaged in potentially infringing activities. Here, by contrast, by the time that BRP got around to getting any sort of opinion from Mr. Marcus, BRP had known about the patents already for eight years. Testimony has established that BRP had been selling potentially infringing products across their entire product line for at least a half a decade.

In cases where no advice of counsel was sought by the accused infringer, *Seagate* provides that a court may find that a defendant objectively relied on another reliable defense to infringement, such as non-infringement or invalidity of the underlying patent.  Nevertheless, cases that have found no willfulness despite no advice of counsel have involved much stronger facts than those present in this action, such as where the finds weak evidence of infringement altogether.  In *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 560 F. Supp. 2d 227, 301-05 (W.D.N.Y. 2008), *judgment entered*, 2008 WL 5115252 (W.D.N.Y. 2008) *and aff'd*, 351 F. App'x 441 (Fed. Cir. 2009), for example, the district court based its finding of lack of

recklessness on a finding of no infringement: "There can be no willful infringement where there is no infringement. . . .  Agfa has not infringed."  *Id.* at 302.  Furthermore, the Court noted that the defendants made conscious efforts to design products around claims inventions, and the plaintiff had a group monitoring defendant's activities but did not inform defendant of allegedly infringing activities for six years.  *Id.* at 303 ("[Defendants] were aware of the Kodak patents and took the patents into account when they deliberately designed their products to avoid infringing the Kodak patents.  Mr. Hawley testified to that effect with regard to the 1995 meeting between Kodak and DuPont.").

Here, in contrast, BRP attempted to purchase the Arctic Cat patents, rather than planning in good faith to design around them.  When those efforts were unsuccessful, BRP recommenced production of the very models for which they had expressed concern regarding potential infringement – and then sought advice of counsel as to non-infringement years after learning about the patents.  It was objectively reckless for BRP to rely on an infringement defense where its own experts had already concluded a likelihood of infringement.

BRP's last contention is its invalidity defense.  However, this defense depends upon prior art that was squarely before the Patent and Trademark Office when the Office decided to issue the '545 and '969 Patents.  Although perhaps not dispositive, the Court cannot find that it was objectively reasonable for BRP to rely on obviousness as a theory of invalidity where the USPTO specifically drew the opposite conclusion – finding that the patent claims were not so obvious as to preclude the issuance of the patents.  In light of the foregoing, the Court holds that BRP acted despite an objectively high risk of infringement.  Accordingly, the threshold prong of *Seagate* is satisfied, and the issue of subjective willfulness will be considered by the jury.

### C.  Damages and Marking

BRP also seeks judgment as a matter of law on the related issues of damages and marking.  Defendant first argues that, because Arctic Cat's damages expert, Dr. Walter Bratic, improperly relied on information that was not foreseeable or knowable to the parties at a 2004 hypothetical negotiation and completely excluded information that parties actually knew in 2004, Arctic Cat has failed to sustain its burden of proof on damages.  As discussed on summary judgment, BRP's argument on this "book of wisdom" issue boils down to a challenge over the correct measure of damages in this case, an issue hotly disputed by the parties.  *See* Order on Summary Judgment at 28; *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989) ("There is no rule that a royalty be no higher than the infringer's net profit margin."); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984) ("Evidence of the infringer's actual profits generally is admissible as probative of his anticipated profits.").  Because Mr. Bratic, indisputably a qualified expert to testify on damages issues, presented for two hours as to appropriate methodology for damages calculations, taking into account proper legal doctrine and factual variables.  While Mr. Bratic's theories may differ from that of Dr. Keith Ugone, who has yet to testify, the Court will not exclude Mr. Bratic's relevant and reliable testimony based on this dispute.  With respect to the underlying evidence on which Mr. Bratic relied, Dr. Cuzzillo and Mr. Kamen both testified as to those predicate facts.  For these reasons, the Court finds that Arctic Cat has more than satisfied its burden with respect to putting on a damages case.

As to marking, BRP argues that Arctic Cat cannot recover damages as to either Patent at Issue for sales of the Accused Products prior to the date of the Complaint, because Arctic Cat did not undertake reasonable efforts to ensure that its licensee to the patents-in-suit, Honda,

complied with the marking requirement of 35 U.S.C. § 287(a).  Section 287(a) provides that "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented" by marking each patented article with the patent number.  *Id.*  If the patent "contains both apparatus and method claims, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so" in order to satisfy the requirements of § 287(a).  *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993); *see Inline Connection Corp. v. AOL Time Warner*, 465 F. Supp. 2d 312, 324 (D. Del. 2007).  If a patentee fails to mark a patented product, it is prohibited from collecting damages for the time period prior to the date it gave the alleged infringer actual notice of infringement.  35 U.S.C. § 287(a) ("In the event of failure so to mark, no damages shall be recovered by the patentee.").  Nevertheless, the marking statute obviously does not require marking when there is nothing to mark, *Am. Med. Sys.*, 6 F.3d at 1538, which is exactly what Arctic Cat suggests here. *See also Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) (stating that compliance with the marking statute is a question of fact).

Because Arctic Cat stopped manufacturing and selling PWCs before any asserted patent issued, the only point of noncompliance with the statute could arise from sales made by Honda, as its sole licensee.  But Honda's sales are inconsequential unless the Honda PWCs are "patented articles" within the scope of the claims of the '545 and '969 patents.  Section 287(a) applies to products sold by licensees.  *Amsted*, 24 F.3d at 185; *Maxwell*, 86 F.3d at 1111.  When the failure to mark a patented product is caused by someone other than the patentee, such as a licensee, courts may consider whether the patentee "made reasonable efforts to ensure compliance with the marking requirements."  *Maxwell*, 86 F.3d at 1111-12.

Although the Federal Circuit has yet to resolve competing views as to which party bears the burden of establishing that there was a product that practiced the patent, the Court held on summary judgment that the burden of production does not shift to a plaintiff to show compliance with a marking statute. *Sealant Sys. In'l, Inc. v. TEK Glob. S.R.L.*, No. 5:11-CV-00774-PSG, 2014 WL 1008183, at *30 (N.D. Cal. Mar. 7, 2014), *rev'd in part on other grounds*, *Sealant Sys. Int'l, Inc. v. TEK Glob., S.R.L.*, 616 F. App'x 987 (Fed. Cir. 2015). BRP requests that the Court reconsider its resolution in the split of authority and hold that Arctic Cat bears the burden of proof as to whether Honda's PWCs were patented articles. Because the Court finds no new authority or convincing evidence otherwise, and the policy rationale set forth by other Courts as support for a defendant bearing the burden in proving relevant defenses to liability, the Court will not reconsider its ruling that BRP bears the burden in proving the defendant of marking. *See* Order on Summary Judgment at 59 ("Indeed, otherwise, a defendant's general allegations could easily instigate a fishing expedition for the patentee in order to stave off pursuit of damages for infringement. This theory also comports with the general allocation of burden to proof for defenses at common law.").

It is undisputed that there is virtually no evidence at all in this case that Honda is, or ever did, sell any kind of patented article. For that reason, BRP has failed as a matter of law to meet its burden in proving that Honda sold patented articles, requiring Arctic Cat to have taken reasonable efforts to ensure that Honda comply with the marking requirement of 35 U.S.C. § 287(a) and, thereby, limiting potential damages. BRP's Motion for judgment as a matter of law on damages and marking is, therefore, denied. As detailed above, the issue of damages will be properly presented to the jury for resolution of the parties' competing views.

### D.  Laches

BRP challenges Arctic Cat's right to damages in this case pursuant to the doctrine of laches, which is an equitable defense that limits recovery in extraordinary circumstances, where a party unreasonably delays filing suit.  *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, LLC, 807 F.3d 1311, 1333 (Fed. Cir. 2015) (*en banc*), *cert. granted*,[1] No. 15-927 (U.S.); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (*en banc*), *overruled in part on other grounds by SCA Hygiene*, 807 F.3d at 1332.  Whether or not laches prevents the recovery of post-filing damages depends on "the flexible rules of equity and . . . district court discretion."  *SCA Hygiene*, 807 F.3d at 1333.

BRP alleges that because laches applies, the law does not allow for the recovery of damages for infringement that occurred prior to October 16, 2014, the date that this lawsuit was filed.  *See id.*  Specifically, BRP argues that because the patents-in-suit clearly had application in the PWC industry, Arctic Cat had a duty to investigate potentially infringing activities – and its failure to do so and, thus, its failure to initiate this lawsuit in a timely manner was both unreasonable and inexcusable.  Arctic Cat, in response, defends the reasonableness of the delay and urges the Court to make a decision on the merits of this case, particularly as the law with respect to the doctrine of laches is currently unsettled.  *Compare Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014) ("Laches, we hold, cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window [provided by the Copyright Act].") *with SCA Hygiene*, 807 F.3d at 1333 (holding, in a 6-5 split, that laches

---

[1] The Supreme Court granted the petition for writ of certiorari in *SCA Hygiene*, which was filed in January, on May 2, 2016 – by coincidence, the same date that the Court issued its Order Denying Summary Judgment.

remains a viable defense to legal relief in patent cases). These cases do create a somewhat hazy landscape; nevertheless, as to the merits, the standard for laches has not changed.

To prove laches, a defendant normally shows "that the plaintiff delayed filing suit an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and . . . the delay resulted in material prejudice or injury to the defendant." *Wanlass v. General Electric*, 148 F. 3d 1334, 1337 (Fed. Cir. 1998) (citations omitted). The latter prong may be established by either evidentiary or economic prejudice. *Id.* Evidentiary prejudice arises when a defendant's ability to present a full and fair defense on the merits is damaged by the loss of records, death of a witness, or unreliable memories of past events, undermining the court's ability to judge the facts. *Id.* However, a delay of more than six years in bringing suit raises a presumption that the delay is unreasonable, inexcusable, and prejudicial. *Id.* Once the presumption arises, the patentee bears the burden of showing "that either the patentee's delay was reasonable or excusable under the circumstances or the defendant suffered neither economic nor evidentiary prejudice. Whenever the presumption arises, including in the summary judgment context, the patentee's evidence must be sufficient to raise a genuine issue of material fact about either the excuse for or reasonableness of the delay, or the existence of the prejudice." *Id.* at 1337.

The period of delay begins at the time that the patentee had actual or constructive knowledge of the defendant's potentially infringing activities. *Id.* at 1337-38; *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997), *overruled in part on other grounds by Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) ("[D]elay begins when the plaintiff knew, *or in the exercise of reasonable diligence should have known*, of the defendant's allegedly infringing activity.") (emphasis added). The patent owner

"is chargeable with such knowledge as he might have obtained upon inquiry." *Wanlass*, 148 F.3d at 1338. "Pervasive, open, and notorious activities" that would lead a reasonable patentee to suspect infringement trigger this duty of inquiry.   *Id.*   "For example, sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention, or published descriptions of the defendant's potentially infringing activities, give rise to a duty to investigate whether there is infringement."   *Id.*

More than ten years before Arctic Cat filed this lawsuit, BRP was engaged in activities that it describes as "pervasive, open, and notorious" and, it argues, that should have led Plaintiff to investigate.  The record testimony demonstrates that Arctic Cat was aware in 2002 that BRP was selling PWCs in the United States.  Beginning in 2004, these sales included its Sea-Doo 3D equipped with OTAS.  From 2004 through 2007, BRP openly distributed product information clearly disclosing the use of OTAS in BRP PWCs – for example, from 2004 to 2007, BRP distributed to PWC retailers across the U.S. product specification sheets for the Sea-Doo 3D indicating that the 3D models were equipped with OTAS.  Additionally, operator's guides for the 3D and published articles, which would have been publically available beginning in 2004, clearly indicated that BRP's 3D incorporated OTAS.   In November 2005, BRP's website contained product information for a 2006 model of the 3D confirming that it was equipped with OTAS.   BRP argues that Arctic Cat should be charged with constructive knowledge of infringement starting in 2004 for these reasons.  *See* BRP Reply at 14.

Because Arctic Cat waited well over six years after that to sue BRP, the presumption of laches attaches and Arctic Cat bears the burden of rebutting the presumption.  Thus, Arctic Cat, as the patentee, must present evidence sufficient to rebut the presumption, demonstrating excuse for or reasonableness of the delay and/or the lack of the prejudice under the circumstances.  "The

focus is on reasonableness.  A court must consider any excuse for the delay offered by the plaintiff."  *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773-74 (Fed. Cir. 1995) ("The first factor, the length of time that is unreasonable or inexcusable delay in filing suit, depends on the facts and circumstances of each case.") (citations omitted).  The Court finds that Arctic Cat has satisfied this burden.

Arctic Cat has demonstrated reasonableness of the delay so as to preclude any finding of constructive knowledge of infringement in 2004, as well as lack of evidentiary or economic prejudice at trial.  First, the articles, product specification sheets, and other advertisements did not outline the elements of the OTAS system so as to establish that the system contained components bearing directly on the Patents at Issue.  For this reason, Arctic Cat would not have reasonably been put on notice of BRP's potentially infringing activities from these documents. Second, although BRP points to 2004 as the pertinent date for constructive knowledge, in 2004, BRP incorporated OTAS only on a single BRP personal watercraft in its PWC lineup – a PWC that was discontinued due to low sales volume, as corroborated by trial testimony.  *See Tripp v. United States*, 406 F.2d 1066, 1071 (Ct. Cl. 1969) (finding that a plaintiff may reasonably delay an infringement suit until it can "determine that the extent of possible infringement made litigation monetarily ripe").  Accordingly, had Arctic Cat known of this single model, it would have been reasonable for the Plaintiff to determine that bringing a suit against the Defendant for infringement made little economic sense.  Furthermore, during a meeting between representatives of BRP and Arctic Cat at Lake Hamilton, Florida, in March 2000, Fernando Garcia informed Arctic Cat's Fred Bernier that BRP intended to achieve off-throttle steering using a fin or rudder based system, referred to throughout the trial as off-power assisted-steering ("OPAS"), rather than utilizing the Arctic Cat throttle reapplication technology.  In view of Mr.

Garcia's express statement and the fact that BRP did introduce its non-infringing OPAS system on its PWC years before it included OTAS on the 3D model, Arctic Cat alleges that it had no reason to investigate BRP's systems further.  *See Aukerman*, 960 F.2d at 1034 (reasonableness must be judged based on the plaintiff's knowledge).

Arctic Cat has presented evidence corroborating its allegations that the 3D product had a minor presence in the market and was discontinued shortly after it was introduced, supporting the reasonableness of no actual or constructive knowledge of the 3D product – despite the fact that Arctic Cat was aware of the non-infringing OPAS technology.  Between 2004 and 2009, most BRP PWCs utilized the non-infringing OPAS system.  In fact, BRP began moving to OTAS on the accused products only in 2009 – 5 years before this lawsuit was filed.  This evidence convinces the Court that the delay in filing suit – a delay in which BRP's PWC models only began using OTAS widely in 2009, which is unrebutted by BRP – was reasonable.

BRP further argues material prejudice from this delay, resulting from missing evidence that would further support its invalidity defenses.  For example, a BRP employee, Sam Spade, who, in 1998, built and tested a BRP prototype that combined the throttle reapplication system of Rheault with a PWC, known as Proto-14 – along with another BRP employee, Richard Simard – recently passed away.  BRP maintains that the fact that Mr. Spade successfully built and operated Proto-14 in 1998 supports its first argument that the asserted claims were obvious to those skilled in the art. Mr. Spade was the engineer who actually built the system, and he likewise would be the only one with knowledge as to whether Proto-14 was ever publicly demonstrated.  Nevertheless, BRP acknowledges that knowledge of Proto-14 is not significant evidence against validity, as it was never released to the public and, thus, does not qualify as prior art.

The Defendant further contends that witnesses still available have some difficulty recalling events from the relevant time period.  Michael Okerland, in-house counsel for Arctic Cat since 2012, conceded at trial that Arctic Cat was unable to recall some facts relevant to this case, because employees who had knowledge of the events at issue have since retired or left the company, and/or those still with the company have hazy memories.  He also testified that he did not know why Arctic Cat failed to pay maintenance fees on the Patents at Issue.  Likewise, Mr. Christopherson testified in his deposition that he could not remember the events of the March 1999 meeting.  Had Arctic Cat brought this lawsuit earlier, the company likely would have been able to produce a more knowledgeable witness that could recall the details integral to the instant action.  *See I/P Engine, Inc. v. AOL Inc.*, 915 F. Supp. 2d 736, 747 (E.D. Va. 2012) ("[H]ad the suit been brought sooner, it [is] quite probable that [the patentee] would have been able to produce an institutional representative with better knowledge of the period of time at issue in this case.").

There can be no dispute that more evidence would have been available to help resolve this controversy if Arctic Cat had filed suit at an earlier date.  Nevertheless, the Court finds that BRP's showing of evidentiary prejudice is insufficient, as is any evidence of economic prejudice, despite its claims to the contrary.  *See Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992) (holding that absence of nexus between a patentee's delay in filing suit and infringer's financial expenditures precludes a finding of economic prejudice).  With respect to economic prejudice, BRP was aware of each Arctic Cat controlled thrust steering patent shortly after each one issued – and even beforehand, as evidenced by Goudrault's testimony and notes – as well as before BRP sold any PWC with OTAS technology.  BRP believed that the Arctic Cat patents were invalid when issued and never changed its position.  BRP cannot, for this reason,

make any serious claim that it implemented OTAS on its Sea-Doo PWC as a result of Arctic Cat's delay in filing suit.

BRP's evidentiary prejudice argument is equally flawed as it demonstrates a missing nexus between the evidence alleged missing and the cause of the delay. *Aukerman Co.*, 960 F.2d at 1033 ("Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense."). Mr. Spade's inability to participate in the litigation is not prejudicial to BRP. Any speculation that Defendant could have shown that Proto-14 was publicly used through Mr. Spade's testimony is just that – speculation. Furthermore, the evidence presented thus far strongly suggests that Proto-14 was never revealed to the public in any fashion. Mr. Spade certainly may have possessed more intimate knowledge than Mr. Simard, a fellow BRP project engineer that worked with Mr. Spade and rode and tested Proto-14 in Florida. However, Mr. Simard was able to testify at length about the components of Proto-14, how it worked, and his documentation of the testing as BRP's 30(b)(6) representative – despite the relative value of this testimony as compared to testimony regarding other inventions that qualify as prior art. BRP, thus, appears to have a record of any and all relevant facts in this lawsuit relating to Proto-14 without Mr. Spade's testimony. Furthermore, the absence of Mr. Goudrault's partner, Mr. Cutler, appears to have very little to do with the passage of time – despite BRP's protestations to the contrary – and everything to do with the fact that BRP did not call him as a witness despite his availability and alleged relevance to the instant facts.

Although BRP points to potential weaknesses in the record resulting from delay of the instant suit, Arctic Cat sufficiently rebuts each of these points, establishing that, while these issues are perhaps inconvenient, they are not material by any stretch. The evidence presented in

Case No. 14-cv-62369-BLOOM/Valle

this case along with the testimony given at trial thus far convinces this Court that laches cannot be invoked as a defense to infringement.

**IV. Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that BRP's Motion for Judgment as a Matter of Law is **DENIED** as to all issues, including infringement, willfulness, laches, and damages and marking. As a matter of law, Defendant has failed to meet its burden in proving its laches and marking defenses. The Court finds, furthermore, that Defendant acted despite an objectively high risk of infringement, requiring the issue of willfulness to proceed to the jury for a determination of the subjective prong of the *Seagate* test.

**DONE AND ORDERED** in Miami, Florida, this 31st day of May, 2016.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record

21