# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 14-cv-62369-BLOOM/Valle

ARCTIC CAT INC.,

                Plaintiff

v.

BOMBARDIER RECREATIONAL
PRODUCTS INC., *et al.*

                Defendants.

_____/

## JURY INSTRUCTIONS

Members of the jury:

It is my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

### Duty to Follow Instructions

Your decision must be based only on the evidence presented here.  You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole.  You must not single out or disregard any of the instructions on the law.

### Official English Translation

You have heard language other than English during this trial.  You must consider evidence provided through only the official court translators.  It is important that all jurors

consider the same evidence.  So even if some of you know French, you must accept the English translation provided and disregard any different meaning.

### Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted.  But, anything the lawyers say is not evidence and isn't binding on you.

You should not assume from anything I've said that I have any opinion about any factual issue in this case.  Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions.  You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact.  There is no legal difference in the weight you may give to either direct or circumstantial evidence.

### Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision you may believe or

disbelieve any witness, in whole or in part.  The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1.     Did the witness impress you as one who was telling the truth?

2.     Did the witness have any particular reason not to tell the truth?

3.     Did the witness have a personal interest in the outcome of the case?

4.     Did the witness seem to have a good memory?

5.     Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6.     Did the witness appear to understand the questions clearly and answer them directly?

7.     Did the witness's testimony differ from other testimony or other evidence?

**Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact.  And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake does not mean a witness was not telling the truth as he or she remembers it.  People naturally tend to forget some things or remember them inaccurately.  So, if a witness misstated something, you must decide whether it was because of

an innocent lapse in memory or an intentional deception.  The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## Expert Witness

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion.  As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

## Summary of Contentions

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Arctic Cat seeks money damages from BRP for allegedly infringing the 545 patent and the '969 patent by making, importing, using, selling, and offering for sale products and methods that Arctic Cat argues are covered by claims 13, 15, 17, 19, 25, and 30 of the '545 patent and claims 15, 16, 17, and 19 of the '969 patent.  These are the asserted claims of the '545 patent and '969 patent.  The products and methods that are alleged to infringe the '545 patent are the following models of Sea-Doo PWC:

2009 model year:  GTX Limited iS 255 and RXT iS 255;

2010 model year:  GTX Limited iS 260, GTX iS 215, GTX 155, RXT iS 260, RXT-X 260, RXT 215, and Wake Pro 215;

2011 model year:  GTX Limited iS 260, GTX iS 215, GTX 155, RXT iS 260, RTX aS 260, RXT-X 260, RXT 260, Wake Pro 215, Wake 155, GTI SE 130, GTI SE 155, GTI 130, GTI Limited 155, and GTS 130;

2012 model year:  GTX Limited iS 260, GTX 155 S, GTX 155 / 215, RXT iS 260, RXT aS 260, RXT-X 260, RXT 260, RXP-X 260, GTR 215, Wake Pro 215, Wake 155, GTI SE 130 or 155, GTI 130, GTI Limited 155, GTS 130;

2013 model year:  GTX Limited iS 260, GTX 155 S, GTX 155 / 215, RXT aS 260, RXT-X 260, RXT 260, RXP-X 260, GTR 215, Wake Pro 215, Wake 155, GTI SE 130 or 155, GTI 130, GTI Limited 155, GTS 130;

2014 model year:  Spark, GTI 130, GTI Limited 155, GTI SE 130/155, GTS 130, GTX 155, GTX Limited 215, GTX Limited iS 260, GTX S 155, GTR 215, RXP-X 260, RXT 260, RXT-X 260, RXT-X aS 260, Wake 155, Wake Pro 215.

2015 model year: Spark, GTI 130, GTI Limited 155, GTI SE 130/155, GTS 130, GTX 155, GTX Limited 215, GTX Limited iS 260, GTX S 155, GTR 215, RXP-X 260, RXT-X 260, RXT-X aS 260, Wake 155, Wake Pro 215.

The products that are alleged to infringe the '969 patent are the following models of Sea-Doo PWC:

2009 model year:  GTX Limited iS 255 and RXT iS 255;

2010 model year:  GTX Limited iS 260, GTX iS 215, GTX 155, RXT iS 260, RXT-X 260, RXT 215, and Wake Pro 215;

2011 model year:  GTX Limited iS 260, GTX iS 215, GTX 155, RXT iS 260, RXT aS 260, RXT-X 260, RXT 260, Wake Pro 215, Wake 155, GTI SE 130, GTI SE 155, GTI 130, GTI Limited 155, and GTS 130;

2012 model year:  GTX Limited iS 260, GTX 155 S, GTX 155 / 215, RXT iS 260, RXT aS 260, RXT-X 260, RXT 260, RXP-X 260, GTR 215, Wake Pro 215, Wake 155, GTI SE 130 or 155, GTI 130, GTI Limited 155, GTS 130.

BRP denies that it has infringed the asserted claims of the '545 patent and the '969 patent and argues that the asserted claims of the '545 patent and the '969 patent are invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements. BRP also argues that Arctic Cat's damages should be limited in that Arctic Cat's licensee made a patented article that could be marked, which marking would have given notice to BRP of its claim for patent infringement.

Your job is to decide whether BRP has infringed the asserted claims of the '545 patent and/or the '969 patent and whether any of the asserted claims of the '545 patent and/or the '969 patent are invalid.  If you decide that any claim of the '545 patent or the '969 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Arctic Cat to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you make.  I will take willfulness into account later.

**The Role of the Claims of a Patent**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

**How a Claim Defines What It Covers**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim-by-claim.   In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."   When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose.  It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim.  Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

**Independent and Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an

8

independent claim covers.  In this case, claims 13, 15, and 30 of the '545 patent and claim 15 of the '969 patent are each independent claims.

The remainder of the asserted claims in the '545 patent and the '969 patent are "dependent claims."  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the claim to which it refers.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers.  A product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

**Claim Interpretation**

I will now explain to you the meaning of some of the words of the claims in this case.  In doing so, I will explain some of the requirements of the claims.  As I have previously instructed you, you must accept my definition of these words in the claims as correct.  For any words in the claim for which I have not provided you with a definition, you should apply their ordinary meaning.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

The following definitions of certain claim terms and phrases apply:

The term "steerable thrust" in the claims means "thrust above idle thrust that allows the rider to adequately steer the watercraft."

The phrase "independently of the operator" in the claims means "without the operator manually operating the throttle control mechanism or the throttle lever."

9

The term "controlled thrust steering system" in the claims means "system to apply thrust at a level and for a time sufficient to maneuver to avoid an obstacle directly in front of a watercraft."

The phrase "proximity switch at a given distance from said magnet" in the claims means "proximity switch at a distance sufficiently close to be activated by said magnet."

The term "steering mechanism" in the claims means "handlebars and steering post or steering column."

The term "after" in the claims means "immediately." The phrase "after [one event] and after [another event]" in the claims means "immediately" following both events.

The term "upon" in the claims means "immediately."

## Glossary

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract:** A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Anticipation:** A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment:** A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim:** Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception:**  The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings:**  The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements:**  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:**  A product or method that contains the claimed invention.

**Enablement:**  A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention.  The specification of the patent must contain such an enabling description.

**Examination:**  Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:**  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:**  Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent.

**Limitation:**  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness:**  One of the requirements for securing a patent.  To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the earlier of the filing date of the patent application or the date of invention.

**Office Action:**  A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent:**  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed.  When the patent expires, the right to make, use, or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings, and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor that has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO):**   An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art:**   Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available, such as trade skills, trade practices, and the like.

**Prosecution History:**  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On:**  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice:**  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

**Requirement:**   A required part or step of an invention set forth in a patent claim.  The word "requirement" is often used interchangeably with the word "limitation."

**Royalty:**  A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:**  The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.


**Stipulations**

Sometimes the parties have agreed that certain facts are true.  This agreement is called a stipulation.  You must treat these facts as proved for this case:

A.  U.S. Patent No. 6,568,969 ("the '969 Patent") issued on May 27, 2003.

B.  U.S. Patent No. 6,793,545 ("the '545 Patent") issued on September 21, 2004.

C. The '969 and '545 Patents are part of a family of seven Arctic Cat ("AC") patents that claim priority to a November 1, 1999 patent application; all but the '545 Patent (including the '969 Patent) have expired.

D.  Arctic Cat Inc. is the owner of all right, title, and interest in the '545 and '969 Patents and has standing to pursue this case for alleged infringement of the patents.

E.  Each of the Accused Sea Doo PWC are or were sold by Bombardier Recreational Products Inc. and/or BRP U.S. Inc. in the United States.

F.  Each of the Accused Sea Doo PWC are or were sold in the United States with Off Throttle Assisted Steering, or OTAS.

G.  Each of the Accused Sea Doo PWC had the same version of OTAS.

H.  All Accused Sea Doo PWC are jet-propelled personal watercraft.

I.  All Accused Sea Doo PWC include a steering mechanism.

J.  All Accused Sea Doo PWC include a steering nozzle.

K.  All Accused Sea Doo PWC include a throttle lever.

L.  All Accused Sea Doo PWC include a throttle control mechanism.

M.  All Accused Sea Doo PWC include a thrust mechanism that provides jet propulsion thrust.

N.  All Accused Sea Doo PWC include magnets mounted on the steering column.

O.  All Accused Sea Doo PWC include a proximity switch.

P.  OTAS in the Accused Products is a software module contained in the electronic control unit on the Accused Products and does not contain solenoids and/or cables to activate the thrust mechanism on the PWC.

Q.  When in an ACTIVE state, OTAS provides multiple levels of thrust.

R.  The following are prior art under 35 U.S.C. § 102(a), (b), or (e):

    i.  Canadian Patent Application 2,207,938 ("Rheault '938");

    ii.  BRP's 1997 Sea Doo Challenger Jet Boat 1800   ("1997 Challenger");

    iii. BOMBARDIER, 1997 OPERATOR'S GUIDE, CHALLENGER 1800 ("Challenger Guide");

    iv.  BRP's 1998 Sea Doo Speedster Jet Boat ("1998 Speedster");

v.  BOMBARDIER, 1998 OPERATOR'S GUIDE, SPEEDSTER ("Speedster Guide");

vi.  BRP's 1998 Sea-Doo GTX RFI PWC ("1998 GTX RFI");

vii.  BOMBARDIER, 1998 OPERATOR'S GUIDE, GTX RFI ("GTX RFI Guide");

viii.  U.S. Patent No. 6,124,809 ("Boudriau '809");

ix.  U.S. Patent No. 6,276,230 ("Crum '230");

xiv.  SAE, PROPOSAL TO STUDY OFF-THROTTLE STEERING OF JET-PUMP PROPELLED CRAFT (Dec. 1997) ("1997 SAE Proposal");

xv.  SAE, INTERIM REPORT, OFF-THROTTLE STEERING OF JET- PROPELLED CRAFT, GRANT 18 (Feb. 1999) ("SAE Interim Report"); and

xvi.  SAE, DRAFT FINAL REPORT, OFF-THROTTLE STEERING OF JET- PROPELLED CRAFT, GRANT 18 (Aug. 1999) ("SAE Draft Final Report").

S.  BRP's 1997 Challenger commercially embodied Rheault '938 and was offered for sale beginning in 1997.

T.  BRP's 1998 Speedster commercially embodied Rheault '938 and was offered for sale beginning in 1998.

U.  BRP's 1998 GTX RFI was a PWC with a steering mechanism (handlebars and a steering post/column) with a throttle lever mounted on the steering mechanism and biased toward idle.

V.  Rheault '938, BRP's 1997 Challenger, the Challenger Guide, BRP's 1998 Speedster, and the Speedster Guide include the following elements of the asserted claims:  (1) a watercraft (all asserted claims); (2) thrust mechanism (all asserted claims); (3) throttle lever (all asserted claims); (4) steering nozzle (all asserted claims of the '545 Patent); (5) a throttle regulator for regulating the thrust provided by the thrust mechanism (claims 17 and 19 of the '545 Patent; claim 16 of the '969 Patent).

W.  The SAE Interim Report includes the following elements of the asserted claims:  (1) a watercraft (all asserted claims); (2) steering mechanism (all asserted claims); (3) thrust mechanism (all asserted claims); (4) throttle lever (all asserted claims); (5) steering nozzle (all asserted claims of the '545 Patent); and (6) a throttle regulator for regulating the thrust provided by the thrust mechanism (claims 17 and 19 of the '545 Patent; claim 16 of the '969 Patent).

14

X.     The SAE Draft Final Report includes the following elements of the asserted claims:    (1) a watercraft (all asserted claims); (2) steering mechanism (all asserted claims); (3) thrust mechanism (all asserted claims); (4) throttle lever (all asserted claims); (5) steering nozzle (all asserted claims of the '545 Patent); and (6) a throttle regulator for regulating the thrust provided by the thrust mechanism (claims 17 and 19 of the '545 Patent; claim 16 of the '969 Patent).

Y.     BRP's SeaDoo 1998 GTX RFI includes the following elements of the asserted claims: (1) a watercraft (all asserted claims); (2) steering mechanism (all asserted claims); (3) thrust mechanism (all asserted claims); (4) throttle lever (all asserted claims); (5) steering nozzle (all asserted claims of the '545 Patent); (6) throttle body (dependent claim 19 of the '545 Patent; dependent claim 19 of the '969 Patent); and (7) a throttle regulator for regulating the thrust provided by the thrust mechanism (claims 17 and 19 of the '545 Patent; claim 16 of the '969 Patent).

Z.     Keith Alan ("Sam") Spade was diagnosed with cancer and went on medical leave on August 23, 2014; he was unable to assist BRP in the current lawsuit due to his illness and passed away on August 3, 2015.

AA.     From at least 1995 through the present, AC has been aware that BRP sold PWCs in the United States.

BB. By 2003, all PWC manufacturers offered an assisted steering feature (either off-throttle or off-power steering) on their PWC sold in the U.S.

CC.     Beginning in 2004, BRP's sales of PWCs included its Sea-Doo 3D equipped with OTAS.

DD. After 2002, BRP was one of only four companies (along with Kawasaki, Yamaha, and Honda) that manufactured PWCs for sale in the U.S.

EE. On or about February 15, 2002, Arctic Cat and Honda entered into a license agreement that included U.S. Patent No. 6,159,059; U.S. Patent No. 6,231,410; U.S. Patent Application No. 09/819,064; U.S. Patent Application No. 09/456,698; and "any subsequent continuing patent applications, reissues, reexaminations or new patent applications that result in Arctic Cat patents that patentably cover Arctic Cat's Controlled Thrust Steering methods, systems and developments," which includes both the '545 Patent and the '969 Patent.

FF.. During negotiations with Honda, AC agreed to a license that did not include a marking requirement.

II.  Honda sold the following products in the United States:

     i.   2002 Honda ARX1200T3/N3 – AQUATRAX F-12X/F-12;

ii.   2003 Honda ARX1200T2/N3 – AQUATRAX R-12X;

iii.  2004 ARX1200N2 – AQUATRAX R-12;

iv.  2004 Honda ARX1200T2 – AQUATRAX R-12X;

v.   2004 Honda ARX1200T3/T3D/N3 – AQUATRAX F-12X/F-12;

vi.  2005 Honda ARX1200T2/N2 – AQUATRAX R-12X/R-12;

vii. 2005 Honda ARX1200T3DX/T3/N3 – AQUATRAX F-12X with GPScape/F-12X/F-12;

viii.    2006 Honda ARX1200T2/ARX1200N2 – AQUATRAX R-12X/R-12;

ix.  2006 Honda ARX1200T3/T3D – AQUATRAX F-12X/F-12X (GPS);

x.   2007 Honda ARX1200T2/ARX1200N2 – AQUATRAX R-12X/R-12;

xi.  2007 Honda ARX1200T3/T3D – AQUATRAX F-12X/F-12X (GPS);

xii. 2008 Honda ARX1200T2/ARX1200N2 – AQUATRAX R-12X/R-12;

xiii.    2008 Honda ARX1500T3/T3D/N3 – AQUATRAX F-15X with GPScape/F-15X/F-15; and

xiv.    2009 Honda ARX1500T3DX/T3/N3 – AQUATRAX F-15X with GPScape/F-15X/F-15.

JJ. AC did not make any effort to ensure Honda marked the PWCs that it sold with the patent number of the '545 Patent, '969 Patent, or any related patents.

KK.    AC first gave BRP actual notice of infringement of the '545 Patent and the '969 Patent on October 16, 2014, when it filed its complaint in this lawsuit.

**Infringement Generally**

I will now instruct you how to decide whether or not BRP has infringed the '545 patent or the '969 patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, Arctic Cat has alleged that BRP directly infringes the '545 patent and the '969 patent.

In order to prove infringement, Arctic Cat must prove that the requirements for direct infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of direct infringement have been proved.

**Direct Infringement by "Literal Infringement"**

In order to prove direct infringement, Arctic Cat must prove by a preponderance of the evidence, i.e., that it is more likely than not, that BRP made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim and did so without the permission of Arctic Cat during the time the patent was in force.  You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule.  If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets additional requirements of any claims that depend from the independent claim, thus, whether those claims

have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

## Responsibility for Proof – Preponderance of the Evidence

In this case it is the responsibility of Arctic Cat to prove every essential part of its claims by a "preponderance of the evidence."  This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claims are more likely true than not true.

## Willful Infringement

In this case, Arctic Cat argues both that BRP infringed and, further, that BRP infringed willfully.  If you have decided that BRP has infringed, you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine by clear and convincing evidence that BRP acted recklessly.

To prove that BRP acted recklessly, Arctic Cat must prove by clear and convincing evidence that BRP actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.  To determine whether BRP had this state of mind, consider all facts which may include, but are not limited, to:

(1)     Whether or not BRP acted in accordance with the standards of commerce for its industry;

(2)     Whether or not BRP intentionally copied a product of Arctic Cat that is covered by the '545 patent or the '969 patent;

(3)      Whether or not there is a reasonable basis to believe that BRP did not infringe or had a reasonable defense to infringement;

(4)      Whether or not BRP made a good-faith effort to avoid infringing the '545 patent and the '969 patent, for example, whether BRP attempted to design around the '545 patent and the '969 patent;

(5)      Whether or not BRP tried to cover up its infringement; and

(6)      BRP argues it did not act recklessly because it relied on a legal opinion that advised BRP either (1) that the product did not infringe the '545 patent or the '969 patent, or (2) that the '545 patent and/or the '969 patent was invalid.  You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.

### Invalidity—Burden of Proof

I will now instruct you on the rules you must follow in deciding whether or not BRP has proven that claims 13, 15, 17, 19, 25, and 30 of the '545 patent and claims 15, 16, 17, and 19 of the '969 patent are invalid.  To prove that any claim of a patent is invalid, BRP must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

### Clear and Convincing Evidence

As I stated, some defenses need to be proven by clear and convincing evidence. This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain.

**Enablement**

The patent law contains certain requirements for the part of the patent called the specification.  BRP contends that claims 13, 15, 17, 19, 25, and 30 of the '545 patent and claims 15, 16, 17, and 19 of the '969 patent are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention.  To succeed, BRP must show by clear and convincing evidence that the '545 patent and the '969 patent do not contain a sufficiently full and clear description of the claimed invention.  To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the patent application was filed.  This is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of original filing without having to conduct undue experimentation.  However, some amount of experimentation to make and use the invention is allowable.  In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1)     the time and cost of any necessary experimentation;

(2)     how routine any necessary experimentation is in the field of PWCs;

(3)     whether the patent discloses specific working examples of the claimed invention;

(4)     the amount of guidance presented in the patent;

(5)     the nature and predictability of the field of PWCs;

(6)     the level of ordinary skill in the field of PWCs; and

(7)      the scope of the claimed invention.

No one or more of these factors is alone dispositive.   Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.   You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the original application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

## Prior Art

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.   To be prior art, the item or reference must have been made, known, used, published, or patented before November 1, 1999.

For the claim to be invalid because it is not new, BRP must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent. We call these things "anticipating prior art."   To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

21

**Anticipation**

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention. In general, inventions are new when the identical product has not been made, used, or disclosed before. Anticipation requires that all limitations of the claim be disclosed in a single reference and that the elements in the reference are arranged or combined in the same way as in the patent claim. A reference can anticipate a claim even if it does not expressly spell out all the limitations arranged or combined as in the claim, if a person of ordinary skill in the art reading the reference would understand and be able to implement the combination of elements. Anticipation must be determined on a claim-by-claim basis.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular prior art reference, but also what is inherently present or disclosed in that prior art or inherently results from its practice. Prior art inherently anticipates a patent claim if the missing element or feature would necessarily result from what the prior art teaches to persons of ordinary skill in the art. A party claiming inherent anticipation must prove by clear and convincing evidence that the allegedly inherent element necessarily is present. Evidence outside of the prior art reference itself may be used to show that elements that are not expressly disclosed in the reference are inherent in it. In order to be inherent, the feature that is alleged to have been inherent must necessarily have existed in the prior art reference. The fact that it was likely is not sufficient. It is not required, however, that persons of ordinary skill actually recognized or appreciated the inherent disclosure at the time the prior art was first known or used. Thus, the prior use of the patented invention

that was unrecognized and unappreciated can still be an invalidating anticipation, provided the allegedly inherent feature was necessarily present in the reference.

BRP contends that claims 13, 15, and 30 of the '545 patent and claim 15 of the '969 patent are invalid because the claimed inventions is anticipated.  BRP must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Here is a list of ways that BRP can show that a patent claim was not new:

(1)     An invention is not new if it was known to or used by others in the United States before November 1, 1999.  An invention is known when the information about it was reasonably accessible to the public on that date.

(2)     An invention is not new if it was already patented or described in a printed publication, anywhere in the world before November 1, 1999.  A description is a "printed publication" only if it was publicly accessible.

(3)     An invention is not new if it was described in a published patent application filed by another in the United States before November 1, 1999.

(4)     An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States and the application was filed before November 1, 1999.

## Obviousness

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been

obvious to a person of ordinary skill in the field of technology of the patent before November 1, 1999.

BRP may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art before November 1, 1999, in the field of PWCs.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of PWCs that someone would have had before November 1, 1999, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that before November 1, 1999,  there was a reason that would have prompted a person having ordinary skill in the field of personal watercraft to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known functions; (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it

rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known before November 1, 1999.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed invention, such as:

(1)    Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(2)    Whether the invention satisfied a long-felt need;

(3)    Whether others had tried and failed to make the invention;

(4)    Whether others invented the invention at roughly the same time;

(5)    Whether others copied the invention;

(6)    Whether there were changes or related technologies or market needs contemporaneous with the invention;

(7)    Whether the invention achieved unexpected results;

(8)    Whether others in the field praised the invention

(9)    Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(10)    Whether others sought or obtained rights to the patent from the patent holder; and

(11)    Whether the inventor proceeded contrary to accepted wisdom in the field.

**Level of Ordinary Skill**

In deciding what the level of ordinary skill in the field of PWCs is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

**Scope and Content of the Prior Art**

In considering whether the claimed invention was obvious at the time it was made, you should consider the scope and content of the following prior art:

    a.  Canadian Patent Application 2,207,938 ("Rheault '938");

    b.  BRP's 1997 Sea Doo Challenger Jet Boat 1800 ("1997 Challenger");

    c.  Bombardier, 1997 Operator's Guide, Challenger 1800 ("Challenger Guide");

    d.  BRP's 1998 Sea Doo Speedster Jet Boat ("1998 Speedster");

    e.  Bombardier, 1998 Operator's Guide, Speedster ("Speedster Guide");

    f.  BRP's 1998 Sea-Doo GTX RFI PWC ("1998 GTX RFI");

    g.  Bombardier, 1998 Operator's Guide, GTX RFI ("GTX RFI Guide")

    h.  U.S. Patent No. 6,124,809 ("Boudriau '809");

    i.  U.S. Patent No. 6,276,230 ("Crum '230");

    j.  U.S. Patent No. 5,465,079 ("Bouchard '079");

    k.  SAE, Interim Report, Off-Throttle Steering of Jet-Propelled Craft, Grant 18 (Feb. 1999) ("SAE Interim Report"); and

l.   SAE, Draft Final Report, Off-Throttle Steering of Jet-Propelled Craft, Grant 18

(Aug. 1999) ("SAE Draft Final Report").

Where the party challenging the validity of the patent is relying on prior art that was not

considered by the PTO during examination, you may consider whether that prior art is

significantly different and more relevant than the prior art that the PTO did consider.  If you

decide it was different and more relevant, you may weigh that prior art more heavily when

considering whether the challenger has carried its clear-and-convincing burden of proving

invalidity.

**Patent Damages—Introduction**

If you find that BRP infringed any valid claim of the '545 patent or the '969 patent, you

must then consider what amount of damages to award to Arctic Cat.  I will now instruct you

about the measure of damages.  By instructing you on damages, I am not suggesting which party

should win this case, on any issue.  If you find that BRP has not infringed any valid claim of the

'545 patent or the '969 patent, then Arctic Cat is not entitled to any damages.

The damages you award must be adequate to compensate Arctic Cat for the infringement.

They are not meant to punish an infringer.  Your damages award, if you reach this issue, should

put Arctic Cat in approximately the same financial position that it would have been in had the

infringement not occurred.

Arctic Cat has the burden to establish the amount of its damages by a preponderance of

the evidence.  In other words, you should award only those damages that Arctic Cat establishes

that it more likely than not suffered.  While Arctic Cat is not required to prove the amount of its

damages with mathematical precision, it must prove them with reasonable certainty.  You may

not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Arctic Cat may be entitled to recover.  In this case, Arctic Cat seeks a reasonable royalty.  A reasonable royalty is defined as the monetary amount that Arctic Cat and BRP would have agreed upon as a fee for use of the invention at the time prior to when infringement began, which in this case is late 2004.  You must be careful to ensure that your award is no more or no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly.  Note, however, that Arctic Cat is entitled to recover no less than a reasonable royalty for each infringing sale.

**Reasonable Royalty—Definition**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began, which in this case is late 2004.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be

considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

**Reasonable Royalty—Relevant Factors**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    The value that the claimed invention contributes to the accused product.

(2)    The value that factors other than the claimed invention contribute to the accused product.

(3)    Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

Other factors that you may consider include the following:

(1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)    The rates paid by the licensee for the use of other patents comparable to the patent-in- suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The duration of the patent and the term of the license.

(7)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(8)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(9)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(10)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(11)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(12)   The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(13)   The opinion and testimony of qualified experts.

(14)   The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

### Date Damages Begin

The date that Arctic Cat first notified BRP of its claim for patent infringement is the date for the start of damages.  The parties do not agree on that date, and it is up to you to determine what that date is.  Arctic Cat must prove that it is more likely than not that BRP actually was notified of the claim for patent infringement as of the date alleged by Arctic Cat.

Arctic Cat can give notice in two ways.  The first way is to give notice to the public in general.  Arctic Cat can do this by marking substantially all of the products that it sold which included the patented invention, or including on the labeling of substantially all of the products, the word "patent" or the abbreviation "pat." with the number of the patent.  Arctic Cat also may give notice by marking substantially all of the products with "patent" or "pat." and a free internet

address where there is a posting that connects the product with the patent number.  Licensees of the '545 patent and the '969 patent who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number.  If you find that Arctic Cat and its licensees did mark substantially all of their products with the patent number, then October 16, 2008 is the date for the start of damages calculations.  If, however, you find that Arctic Cat and its licensees did not mark substantially all of those products with the patent number, then Arctic Cat did not provide notice in this way.  A second way Arctic Cat can give notice of its patents is to notify BRP directly with a specific claim that BRP's OTAS system infringed the '545 patent and the '969 patent.  This type of notice starts from the date BRP received the notice, which was the date Arctic Cat filed this lawsuit, on October 16, 2014.

## Duty to Deliberate

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous—in other words, you must all agree.  Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors.  So you must discuss the case with one another and try to reach an agreement.  While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong.  But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges—judges of the facts.   Your only interest is to seek the truth from the evidence in the case.

## Note-taking

You have been permitted to take notes during the trial.  Most of you–perhaps all of you–have taken advantage of that opportunity.

You must use your notes only as a memory aid during deliberations.  You must not give your notes priority over your independent recollection of the evidence.  And you must not allow yourself to be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than your memories or impressions about the testimony.

## Election of Foreperson; Explanation of Verdict Forms

When you get to the jury room, choose one of your members to act as foreperson.  The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room.  When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it.  Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer.  The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom.  Please understand that I may have to talk to the lawyers and the parties before I respond to your

question or message, so you should be patient as you await my response.  But I caution you not to tell me how many jurors have voted one way or the other at that time.  That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 14-62369-CIV-BLOOM/VALLE**

**ARCTIC CAT INC.,**

        Plaintiff

vs.

**BOMBARDIER RECREATIONAL**
**PRODUCTS INC.,** *et al.*

        Defendants.

_____/

## <u>VERDICT FORM</u>

      When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form.  Your answer to each question must be unanimous.  Some of the questions contain legal terms that are defined and explained in detail in the Jury Instructions.  Please refer to the Jury Instructions if you are unsure about the meaning or usage of any legal term that appears in the questions below.

      Based on the evidence admitted at trial and in accordance with the instructions as given by the Court, we, the jury, unanimously agree to the answers to the following questions:


## I.  Infringement

      The questions regarding infringement should be answered regardless of your findings with respect to invalidity.

      Has Arctic Cat proven it is more probable than not that BRP infringed the following claims?

      a.  Claim 13 of the '545 patent        Yes_____      No_____

b.  Claim 15 of the '545 patent    Yes_____    No_____

c.  Claim 17 of the '545 patent    Yes_____    No_____

d.  Claim 19 of the '545 patent    Yes_____    No_____

e.  Claim 25 of the '545 patent    Yes_____    No_____

f.  Claim 30 of the '545 patent    Yes_____    No_____

g.  Claim 15 of the '969 patent    Yes_____    No_____

h.  Claim 16 of the '969 patent    Yes_____    No_____

i.  Claim 17 of the '969 patent    Yes_____    No_____

j.  Claim 19 of the '969 patent    Yes_____    No_____

**II.  Invalidity**

The questions regarding invalidity should be answered regardless of your findings with respect to infringement.

**A.  Anticipation.**  Has BRP proven that it is highly probable that the following claims were "anticipated," or, in other words, not new?

a.  Claim 13 of the '545 patent    Yes_____    No_____

b.  Claim 15 of the '545 patent    Yes_____    No_____

c.  Claim 30 of the '545 patent    Yes_____    No_____

d.  Claim 15 of the '969 patent    Yes_____    No_____

**B.  Obviousness.**  Has BRP proven that it is highly probable that the following claims are invalid as obvious:

a.  Claim 13 of the '545 patent    Yes_____    No_____

b.  Claim 15 of the '545 patent    Yes_____    No_____

c.  Claim 17 of the '545 patent        Yes_____        No_____

d.  Claim 19 of the '545 patent        Yes_____        No_____

e.  Claim 25 of the '545 patent        Yes_____        No_____

f.  Claim 30 of the '545 patent        Yes_____        No_____

g.  Claim 15 of the '969 patent        Yes_____        No_____

h.  Claim 16 of the '969 patent        Yes_____        No_____

i.  Claim 17 of the '969 patent        Yes_____        No_____

j.  Claim 19 of the '969 patent        Yes_____        No_____

**C.  Enablement.**  Has BRP proven that it is highly probable that the following claims do not contain a description of the claimed invention that is sufficiently full and clear to enable persons of ordinary skill in the field of the invention to make and use the invention?

a.  Claim 13 of the '545 patent        Yes_____        No_____

b.  Claim 15 of the '545 patent        Yes_____        No_____

c.  Claim 17 of the '545 patent        Yes_____        No_____

d.  Claim 19 of the '545 patent        Yes_____        No_____

e.  Claim 25 of the '545 patent        Yes_____        No_____

f.  Claim 30 of the '545 patent        Yes_____        No_____

g.  Claim 15 of the '969 patent        Yes_____        No_____

h.  Claim 16 of the '969 patent        Yes_____        No_____

i.  Claim 17 of the '969 patent        Yes_____        No_____

j.  Claim 19 of the '969 patent        Yes_____        No_____

**III. Willful Infringement.**   If there are any claims for which you answered "Yes" to Infringement and "No" to Anticipation, Obviousness, and Enablement, has Arctic Cat proven by clear and convincing evidence that BRP infringed those claims of Arctic Cat's patents with reckless disregard of whether such claim was infringed or was invalid or unenforceable?

    a.  Claim 13 of the '545 patent        Yes_____        No_____

    b.  Claim 15 of the '545 patent        Yes_____        No_____

    c.  Claim 17 of the '545 patent        Yes_____        No_____

    d.  Claim 19 of the '545 patent        Yes_____        No_____

    e.  Claim 25 of the '545 patent        Yes_____        No_____

    f.  Claim 30 of the '545 patent        Yes_____        No_____

    g.  Claim 15 of the '969 patent        Yes_____        No_____

    h.  Claim 16 of the '969 patent        Yes_____        No_____

    i.  Claim 17 of the '969 patent        Yes_____        No_____

    j.  Claim 19 of the '969 patent        Yes_____        No_____

**IV. Damages**

If there are any claims for which you answered "Yes" to Infringement and "No" to Anticipation, Obviousness, and Enablement, proceed to answer the questions below.  If there are no such claims, do not answer the questions below and proceed to sign and date the verdict form.

    a.  What date do you find that damages begin?

    _____    October 16, 2008 (Check this option if you find that Arctic Cat's licensee

             did not make a patented article that could be marked.)

_____   October 16, 2014 (Check this option if you find that Arctic Cat's licensee

did make a patented article that could be marked.)

b.  What damages do you find Arctic Cat has proven it is more probable than not that it is

entitled to as a reasonable royalty?

**Reasonable Royalty**

 Rate of $_____ per unit sold

**For the Jury:**

**By**:_____
**Foreperson**

_____
**Date**