UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-cv-62369-BLOOM/Valle

ARCTIC CAT INC.,

       Plaintiff,

v.

BOMBARDIER RECREATIONAL
PRODUCTS, INC., and BRP U.S. INC.,

       Defendants.

_____/

## ORDER

THIS CAUSE is before the Court upon two Motions: (1) Defendants Bombardier Recreation Products, Inc. and BRP U.S. Inc.'s (hereinafter, referred to together as "BRP" or "Defendant") Renewed Motion for Judgment as a Matter of Law (or "JMOL") or for a New Trial, ECF No. [169] (the "Defendant's Motion"); and (2) Plaintiff Arctic Cat Inc.'s ("Plaintiff" or "Arctic Cat") Motion for (A) Accounting of Supplemental Damages, (B) Post-Judgment Ongoing Royalty, and (C) Periodic Accounting through Expiration of the '545 Patent (defined below), ECF No. [160] (the "Plaintiff's Motion"). The Court entered Final Judgment in the above-styled case on June 13, 2016, ECF No. [157] (the "Judgment"), and denied BRP's Motion to Vacate the Judgment on July 27, 2016, ECF No. [200] ("Order Denying Motion to Vacate"). The Court has reviewed the Motions, all supporting and opposing submissions and exhibits, the record, and the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is denied, and Plaintiff's Motion is granted in part and denied in part.

eugene

## I.   Background

Following a ten-day jury trial, a verdict issued in the above-styled case, finding BRP liable to Plaintiff Arctic Cat Inc. ("Plaintiff" or "Arctic Cat") for willful infringement through the sale of certain models of personal watercraft under the name, Sea-Doo, which incorporated an off-throttle assisted steering technology (the "Infringing PWCs").  *See* ECF No. [153] (Jury "Verdict," dated June 1, 2016).  Therein, the jury concluded that BRP infringed ten claims in Arctic Cat's Patents, United States Patent Numbers 6,793,545 ("the '545 Patent"), and 6,568,969 ("the '969 Patent").  *See id.* at 1-2.  The jury further held that BRP failed to prove its invalidity defenses of anticipation, obviousness, and enablement.  *Id.* at 2-3.  As to damages, the jury identified October 16, 2008, as the proper starting date, and $102.54 as the reasonable royalty per unit sold to which Arctic Act is entitled.  The parties stipulated to the number of units sold since October 16, 2008, to wit, 151,790.  *See* ECF No. [149] (trial minutes, May 31, 2016).

Moreover, the jury found, by clear and convincing evidence, that BRP infringed the above-listed claims "with reckless disregard of whether such claim was infringed or was invalid or unenforceable."  Verdict at 4.  The issue of subjective willfulness reached the jury after the Court found objective willfulness by clear and convincing evidence, pursuant to the two-part *Seagate* test, in its Order Denying JMOL, ECF No. [148] ("Order Denying JMOL") (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).[1]  Coincidentally, the Supreme Court issued a ruling shortly after the conclusion of trial that, *inter alia*, discarded the *Seagate* test for willfulness as inconsistent with Section 284 of the Patent Act.  *See Halo Elecs., Inc. v. Pulse*

---

[1] Under the first, objective prong of this test, a patent owner must "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *Seagate*, 497 F.3d at 1371.  Under the second, subjective prong, the patentee must demonstrate, also by clear and convincing evidence, that the risk of infringement "was either known or so obvious that it should have been known to the accused infringer."  Of course, any consideration of the *Seagate* test was limited to the Court's Order Denying JMOL, and oral argument on the same – and did not affect any other aspect of the trial.

*Elecs., Inc.*, 136 S. Ct. 1923, 1926 (2016) (citing 35 U.S.C. § 284).  *Halo* held that "an independent showing of objective recklessness should [*not*] be a prerequisite to enhanced damages" and that a determination as to enhancement should be governed by the preponderance of the evidence standard that "has always" governed all other aspects of patent-infringement litigation.  136 S. Ct. at 1926-27.  This decision, importantly, did not impact the validity of the Judgment in this case because, as the Court explained, "where both objective willfulness and subjective willfulness were found by clear and convincing evidence, a more lenient inquiry as to subjective willfulness, without the additional hurdle imposed by the objective willfulness inquiry, and by the lesser preponderance of the evidence standard, would reach the same result."  Judgment at 3.  Furthermore, *Halo* only reaffirmed the subjective willfulness inquiry that was submitted to the jury in this case.  136 S. Ct. at 1933 ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless.").

Pursuant to the applicable law, including the issuance of *Halo*, and after due consideration of the totality of the circumstances, the Court held that the Verdict entitled Arctic Cat to the trebling of damages and, thus, directed BRP to return $46,693,639.80, along with any applicable interest, to the Plaintiff.  *See generally* Judgment.  Post-Judgment, the Defendant renews its Motion for JMOL or, alternatively, requests a new trial, under Rules 50(b) and 59, respectively, of the Federal Rules of Civil Procedure.  At the same time, Plaintiff seeks imposition of supplemental damages, a post-judgment ongoing royalty, and periodic accounting through expiration of the '545 Patent.  The Court now endeavors to resolve the parties' two competing requests.

## II. Legal Standard

### A. Rule 50

"Under Rule 50, a party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) (internal quotations omitted; alterations adopted) (citing Fed. R. Civ. P. 50). The standard by which the motion is reviewed is the same regardless of whether the motion is brought pursuant to Rule 50(a) or 50(b). *Id.* (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004); *Arthur Pew Constr. Co. v. Lipscomb*, 965 F.2d 1559, 1563 (11th Cir. 1992); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2537 (2d ed. 1995)). Where a post-verdict motion for JMOL "pertains uniquely to patent law," it is reviewed under Federal Circuit law as opposed to the law of the regional circuit, *Junker v. Eddings*, 396 F.3d 1359, 1363 (Fed. Cir. 2005); on the other hand, evidentiary rulings and denials of motions for JMOL are reviewed under the law of the regional circuit. *See Retractable Tech., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1302 (Fed. Cir. 2011) ("In reviewing evidentiary rulings and denials of motions for JMOL, we apply the law of the regional circuit."); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1218 (Fed. Cir. 2006) (applying regional circuit law when reviewing a *Daubert* ruling).

To succeed under Rule 50(b), the movant has the burden to prove that there is indeed only "one reasonable conclusion as to the verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001). In other words, "the facts and inferences [of a case must] point so overwhelmingly in favor of the movant that reasonable people could not

arrive at a contrary verdict." *Millette v. DEK Techs., Inc.*, -- F. Supp. 2d --, 2011 WL 5331708, at *2 (S.D. Fla. Nov. 7, 2011). When reviewing a motion under Rule 50, the Court is obligated to review the evidence in the light most favorable to the non-moving party. *See Hanes v. Greyhound Lines, Inc.*, 316 F. App'x 841, 842 (11th Cir. 2008) (citing *Daniel v. City of Tampa*, 38 F.3d 546, 549 (11th Cir. 1994)); *Sherrod v. Palm Beach Cnty. Sch. Dist.*, 424 F. Supp. 2d 1341, 1344 (S.D. Fla. 2006) ("[The Court] must view the evidence in a light most favorable to the plaintiff, and must not weigh the evidence nor assess witness credibility.") (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### B.  Rule 59

"A post-judgment motion may be treated as made pursuant to either Fed. R. Civ. P. 59 or 60 – regardless of how the motion is styled by the movant – depending on the type of relief sought." *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997). A party cannot, however, use a post-judgment motion "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (citing *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998)).

Among other relief, a court may grant a new jury trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). For instance, a party may assert that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Thus, a motion for new trial should be granted "when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would

prevent the direction of a verdict." *Brown v. Sheriff of Orange Cnty., Fla.*, 604 F. App'x 915 (11th Cir. 2015) (per curiam) (quoting *Lipphardt*, 267 F.3d at 1186); *see Tucker v. Hous. Auth. of Birmingham Dist.*, 229 F. App'x 820, 826 (11th Cir. 2007) ("[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence."); *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1320 n.3 (11th Cir. 1999) (holding that, because a "less stringent standard applies to a motion for a new trial than to a motion for a judgment as a matter of law," the failure to meet the Rule 59 standard is fatal to the Rule 50(b) standard) (citation omitted).

Additionally, a motion for a new jury trial "may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward*, 311 U.S. at 251.  Jury instructions merit a new trial where the instructions give the jury "a misleading impression or inadequate understanding of the law and the issues to be resolved." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1081 (11th Cir. 2003) (quoting *Stuckey v. Northern Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989)); *see U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 804 (11th Cir. 2015) (instructing that reversal on instructions only occurs where there is "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations") (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1260 (11th Cir. 2002)).

"[G]ranting motions for new trial touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before [her]." *Sherrod v. Palm Beach Cnty. Sch. Dist.*, 237 F. App'x 423, 424 (11th Cir. 2007) (quoting *Christopher v. Florida*, 449 F.3d 1360, 1366 n.4 (11th Cir. 2006)).  Ultimately, "motions for a new trial are committed to the discretion of the trial court." *Montgomery v. Noga*,

168 F.3d 1282, 1295 (11th Cir. 1999); *Steger*, 318 F.3d at 1081 (citing *Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1503 (11th Cir. 1985)) ("A district court is permitted wide discretion in considering a motion for new trial based on an erroneous jury instruction.").

### III. Discussion

#### A.  Defendant's Motion

At the close of Arctic Cat's case-in-chief and prior to the Court's submission of this matter to the jury, BRP moved for JMOL under Rule 50(a).  Renewing arguments from its summary judgment motion, the Defendant argued that Arctic Cat failed to present legally sufficient evidence from which a reasonable jury could find infringement, willfulness, damages, and marking.[2]  Furthermore, the Defendant submitted that it had presented sufficient evidence on its obviousness invalidity defense to warrant JMOL in its favor.  Citing many of the same reasons for its denial of summary judgment, the Court denied BRP's Rule 50(a) motion.  *See* ECF No. [148].

This is now the third time, albeit now through the lenses of Rules 50(b) and 59, that the Court has reviewed BRP's repackaged arguments, sub-arguments, and support as to obviousness, infringement, willfulness, damages, and marking, with no material change in the evidence or the law.[3]  Fed. R. Civ. P. 50(b), 59.  And, for the third time, BRP's arguments fail.  *See, e.g.*, *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002) (citing *Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000)) ("Where there is no change in the evidence, the same evidentiary dispute that got the plaintiff past a summary judgment motion asserting [a particular argument] will

---

[2] BRP contended then, and continues to argue now, that Arctic Cat bears the burden on marking pursuant to 35 U.S.C. § 287(a).

[3] Of course, no material change in the law other than the issuance of *Halo*, which changed the appropriate standard for willfulness as discussed *infra* and in the Court's Order Denying Motion to Vacate.

usually get that plaintiff past a Rule 50(a) motion asserting the [same argument], although the district court is free to change its mind.").

The Defendant has not carried its burden in showing that there is "only one reasonable conclusion" – of no liability – as to the Verdict in this case.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. All Am. Freight, Inc.*, No. 14-CV-62262, 2016 WL 3787638, at *4 (S.D. Fla. July 6, 2016) (finding that defendant failed to meet standard for renewed JMOL).  Ultimately, and as this Court has already concluded, the Verdict is consistent with both the manifest weight of the evidence and the applicable law.  *See* ECF Nos. [119], [148], [200] (Order Denying Summary Judgment, Order Denying JMOL, Order Denying Motion to Vacate, respectively); Fed. R. Civ. P. 50(b), 59.  Indeed, the Court "will not second-guess the jury or substitute [the Court's] judgment for its judgment[, as BRP essentially requests, because the V]erdict is supported by sufficient evidence."  *Lipphardt*, 267 F.3d at 1186 (quoting *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582 (11th Cir.), *cert. denied*, 531 U.S. 1076 (2000)); *see, e.g.*, *Bozeman v. Pollock*, -- F. Supp. 3d --, 2015 WL 5016510, at *11 (S.D. Fla. Aug. 25, 2015) ("Although Defendants would have the jury believe that the situation [plaintiff] found herself in had no effect on her mental state, the jury was free to draw a different conclusion based on the evidence presented.").

In fact, in the entirety of its forty-five page Motion, BRP raises only two fresh considerations, related to jury instructions on willfulness and marking.  *See generally* Motion. The Court now addresses each claim in turn.

First, in line with the Defendant's arguments in its Motion to Vacate, ECF No. [158], BRP argues that the Verdict cannot stand, because the jury was instructed pursuant to the now-overruled *Seagate* standard.  However, as addressed above as well as in painstaking detail in the

Court's Order Denying Motion to Vacate, the instruction provided to the jury on willful

infringement pertained only to *subjective* willfulness, reading as follows:

> In this case, Arctic Cat argues both that BRP infringed and further that
> BRP infringed willfully. If you have decided that BRP has infringed, you must go
> on and address the additional issue of whether or not the infringement was willful.
> Willfulness requires you to determine by clear and convincing evidence that BRP
> acted recklessly.  To prove that BRP acted recklessly, Arctic Cat must prove by
> clear and convincing evidence that BRP actually knew or should have known that
> its actions constituted an unjustifiably high risk of infringement of a valid and
> enforceable patent.
>
> To determine whether BRP had this state of mind, consider all the facts
> which may include but are not limited to whether or not BRP acted in accordance
> with the standards of commerce for its industry, whether or not BRP intentionally
> copied a product of Arctic Cat that is covered by the '545 patent or the '969
> patent, whether or not there is a reasonable basis to believe that BRP did not
> infringe or had a reasonable defense to infringement, whether or not BRP made a
> good-faith effort to avoid infringing the '545 patent and the '969 patent.  For
> example, whether BRP attempted to design around the '545 patent and the '969
> patent; whether or not BRP tried to cover up its infringement.
>
> And BRP argues it did not act recklessly because it relied on a legal
> opinion that advised BRP either, one, that the product did not infringe the '545
> patent or the '969 patent or, two, that the '545 patent and/or the '969 patent was
> invalid.  You must evaluate whether the opinion was of a quality that reliance on
> its conclusions was reasonable.

ECF No. [182-10] (June 1, 2016, Trial Transcript) at 44:16-45:18 (jury instruction); *Halo*, 136 S.

Ct. at 1933 ("The subjective willfulness of a patent infringer, intentional or knowing, may

warrant enhanced damages, without regard to whether his infringement was objectively

reckless.").

BRP does not and cannot explain how *Halo* impacts the instruction given to the jury on

willful infringement or why, under *Halo*, anything in the instruction is incorrect – other than, of

course, the clear and convincing standard. However, this standard could have only benefited

BRP in that the jury members were directed to hold the evidence introduced at trial to a more

scrutinizing standard than is now applicable to willfulness, to wit, the preponderance of the

evidence standard.  Indeed, the absence of any meaningful argument to this effect is telling.  *See*

*generally* Motion; ECF No. [194] (BRP Reply).  The Defendant cannot escape the fact that the jury found subjective willfulness, even using a clear and convincing evidentiary standard.  *See* Judgment at 2-3; Order Denying Motion to Vacate.  Therefore, it is clear that the willfulness instruction did not in any way provide "a misleading impression or inadequate understanding of the law and the issues to be resolved."  *Steger*, 318 F.3d at 1081.  No relief – whether in the form of vacatur, JMOL, or a new trial – is warranted under these facts.

Second, the Defendant claims that the Court's marking instruction was erroneous.  *See* Motion at 44-45.  The jury instruction entitled, "Date Damages Begin," states, in relevant part:

> Arctic Cat must prove that it is more likely than not that BRP actually was notified of the claim for patent infringement as of the date alleged by Arctic Cat. . . .  If you find that Arctic Cat and its licensees did mark substantially all of their products with the patent number, then October 16, 2008 is the date for the start of damages calculations. If, however, you find that Arctic Cat and its licensees did not mark substantially all of those products with the patent number, then Arctic Cat did not provide notice in this way. . . .

ECF No. [151] (Jury Instructions) at 31-32.

The parties developed and stipulated to this marking instruction.  BRP initially proposed an additional concluding sentence to this paragraph imposing the burden of showing no patented article on Arctic Cat.  *See* ECF Nos. [106], [78].  But, the Defendant dropped this request in a subsequent Joint Proposed Jury Instruction.  *See* ECF No. [146] (Joint Proposed Jury Instructions) at 76.  BRP made no objection to the omission of this sentence during the Court's charging conference.  *See* ECF No. [182-10] (June 1, 2016, Trial Transcript) at 14:6-19:14 (objections to Court's draft jury instructions).  Likewise, BRP made no objection to the Court's inclusion of the question as to whether Honda manufactured and sold a "patented article" on the jury verdict form – and, in fact, argued for its inclusion.  *See id.* at 8:14-9:21, 6:23-14:5 (generally discussing § 287 marking language on Court's draft verdict form).  The Defendant,

therefore, waived any argument that the jury was not properly instructed on the requirements of 35 U.S.C. § 287(a)).  *Id.* at 19:13-14 (Ms. Rodman: "Your Honor, we don't see anything else on our end."); *see Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1394 (11th Cir. 1997) ("Failure to object to the instructions on these grounds before the jury retired constituted a waiver."). Furthermore, notwithstanding this waiver, the Court notes that, contrary to Defendants' argument, the jury was properly instructed as to burden in establishing marking and notice under 35 U.S.C. § 287(a).  *See* Order Denying Summary Judgment at 59[4] (adopting "the better view" that the burden of production does not shift to a plaintiff to show compliance with a marking statute) (quoting *Sealant Sys. In'l, Inc. v. TEK Glob. S.R.L.*, No. 5:11-CV-00774-PSG, 2014 WL 1008183, at *30 (N.D. Cal. Mar. 7, 2014), *rev'd in part on other grounds*, *Sealant Sys. Int'l, Inc. v. TEK Glob., S.R.L.*, 616 F. App'x 987 (Fed. Cir. 2015) (citing *Oracle Am., Inc. v. Google Inc.*, Case No. 3:10-cv-03561-WHA, 2011 WL 5576228, at *2 (N.D. Cal. Nov. 15, 2011)).

BRP makes no other argument that has yet to be addressed after the full presentation of evidence in this case.  *See, e.g.*, *Michael Linet*, 408 F.3d at 763 (noting that a Rule 59 motion cannot be used to "relitigate old matters"); *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (explaining that Rule 59(e) motions do not afford an unsuccessful litigant "two bites at the apple"); *Amegy Bank Nat. Ass'n v. DB Private Wealth Mortgage, Ltd.*, No. 2:12-CV-243-FTM-38CM, 2014 WL 1876208, at *2 (M.D. Fla. May 9, 2014), *aff'd sub nom., Amegy Bank Nat. Ass'n v. Deutsche Bank Alex.Brown*, 619 F. App'x 923 (11th Cir. 2015) ("The jury has reasonably made a determination based on the evidence and thus the Court will not substitute the jury's judgment.  Pursuant to Rule 50(b), this motion is due to be denied.").  Particularly when viewed in the light most favorable to Arctic

---

[4] "Indeed, otherwise, a defendant's general allegations could easily instigate a fishing expedition for the patentee in order to stave off pursuit of damages for infringement.  This theory also comports with the general allocation of burden to proof for defenses at common law."  *Id.*

Cat, as the non-moving party, the Verdict and Judgment are supported by overwhelming evidence as presented at trial and filed on the record during the duration of this action. *See, e.g.*, *Lipphardt*, 267 F.3d at 1186.  BRP, therefore, is not entitled to judgment as a matter of law or to a new trial.

### B.  Plaintiff's Motion

Plaintiff's post-judgment Motion argues that sections 283 and 284 of the Patent Act entitle Arctic Cat, as the prevailing party, to (A) an award of supplemental damages for BRP's sales of the Infringing PWCs from April 30, 2016, through June 14, 2016 (the date of Judgment), at an enhanced rate; (B) entry of an ongoing royalty for BRP sales of the Infringing PWCs from the date of Final Judgment through expiration of the '545 Patent; and (C) periodic accountings of sales of such PWCs through expiration of the '545 patent.  *See* 35 U.S.C. §§ 283, 284.  BRP opposes all relief sought by the Plaintiff.  *See* ECF No. [175] ("BRP Response").  Importantly, however, BRP does not contest that it is continuing to infringe the '545 Patent through sales of the Infringing PWCs through the date of judgment, and onwards.

### 1.  Supplemental Damages

District courts "have discretion to award damages for periods of infringement not considered by the jury." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir. 2012); *see* 35 U.S.C. § 284 ("[W]hen the damages are not found by a jury, the court shall assess them.").  Here, the jury found a per unit reasonable royalty rate of $102.54 for BRP's past infringement.  *See* Verdict.  During trial, both parties' damages experts agreed that BRP sold 151,790 Infringing PWCs between October 16, 2008[5] and April 30, 2016, the date of the most current sales data disclosed by BRP.  *See* ECF No. [161-1] (May 18, 2016, Trial Transcript) at 136:16-137:1 (Arctic Cat damages expert); ECF No. [161-2] (May 31, 2016, Trial Transcript) at

---

[5] This date accounted for the 6-year time limitation imposed by 35 U.S.C. § 286.

27:1-4 (BRP damages expert).  The jury further found that BRP's past infringement was willful,

which ultimately persuaded the Court, after careful consideration of the totality of the

circumstances, to treble the damages awarded by the jury, as provided by § 284.   As this

enhancement amounted to an effective royalty rate of $307.62 per unit, the Court assessed the

total disclosed enhanced damages at $46,693,639.80, representing the product of 307.62 and

151,790.  *See* Final Judgment.

Arctic Cat, therefore, is also entitled to supplemental damages based on undisclosed

infringing sales of the Infringing PWCs occurring after April 30, 2016, through the date of final

judgment, June 14, 2016.  *See Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, No. 09-cv-

290, 2014 WL 13220154, at *4 (W.D. Pa. March 31, 2014), *rev'd on other grounds*, 807 F.3d

1283 (Fed. Cir. 2015) ("[A] prevailing patentee is due the damages for uncalculated pre-verdict

sales through the date of the entry of judgment.  The Court finds that supplemental damages are

properly awarded . . . because the jury did not have the opportunity to assess them due to a lack

of financial information regarding [the defendant's] ongoing sales of Accused [products] at the

time of trial.") (citation omitted).  Specifically, Arctic Cat submits that the royalty for BRP sales

of Infringing PWCs from April 30, 2016, through June 14, 2016, should be assessed at the

implied royalty rate of $307.62, resulting from BRP's willful infringement – and the Court

agrees.   Such pre-judgment sales of BRP's Infringing PWCs are willful infringements, as

determined by the jury, and, thus, are appropriately included in Arctic Cat's Verdict.  As set forth

in the Declaration of Walter Bratic, the estimated number of units from April 30, 2016, through

the date of judgment is 4,848 infringing units.  *See* ECF No. [162] (Bratic Declaration or "Bratic

Decl.") ¶ 5; ECF No. [162-3] (calculations).  Assessed at the royalty rate effectively employed

by the Final Judgment, Arctic Cat is awarded supplemental damages for the period between May

1, 2016, and June 14, 2016, in the amount of $1,491,385.  *See* Bratic Decl. ¶ 6.  The Plaintiff

next seeks prospective relief for alleged ongoing infringement post-Judgment.

## 2.   Ongoing Royalty

Arctic Cat submits – and BRP does not contest – that the Defendant is continuing to

manufacture and sell its Infringing PWCs.   *See* ECF No. [161-4] (May 17, 2016, Trial

Transcript) at 198:15-22; *see also* ECF No. [161-3] (BRP Reports Fiscal Year 2017 First-Quarter

Results, June 9, 2016).  Indeed, the Plaintiff set forth a prayer for ongoing injunctive relief in its

First Amended Complaint to account for this very possibility.  ECF No. [36] (requesting that the

Court "enter orders preliminarily and permanently enjoining BRP and its officers, agents,

directors, servants, employees, attorneys, representatives, parents, subsidiaries, affiliates, and all

of those in active concert, privity or participation with them and their successors and assigns,

from infringing the '545 patent").  BRP appears to oppose any such relief, although it is unclear

on what grounds.   *See* BRP Response at 2 ("Even where a permanent injunction is not

appropriate, a court need not award an ongoing royalty.  However, if the Court awards an

ongoing royalty in this case, it should be no more than the reasonable royalty that the jury

awarded Arctic Cat – $102.54 per unit.")

District courts "may grant injunctions in accordance with the principles of equity to

prevent the violation of any right secured by patent, on such terms as the court deems

reasonable."  35 U.S.C. § 283.  However, in lieu of an injunction prohibiting BRP from using the

life-saving innovations of the '545 patent, Arctic Cat seeks an ongoing royalty rate for BRP's

sales of all Infringing PWCs from June 15, 2016, through expiration of the '545 patent.  *See SCA*

*Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1332-33 (Fed. Cir.

2015) (en banc), *cert. granted*, 136 S. Ct. 1824 (May 2, 2016) ("[A]bsent egregious

circumstances, when injunctive relief is inappropriate, the patentee remains entitled to an ongoing royalty."). This is one of "several types of relief for ongoing infringement that a court can consider." *Whitserve*, 694 F.3d at 38 ("(1) [I]t can grant an injunction; (2) it can order the parties to attempt to negotiate terms for future use of the invention; (3) it can grant an ongoing royalty; or (4) it can exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances."); *see Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010) ("If the district court determines that a permanent injunction is not warranted, the district court may, and is encouraged, to allow the parties to negotiate a license.")); *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 n.16 (Fed. Cir. 2007) (finding that an ongoing royalty is a form of equitable relief authorized under § 283).

Setting an appropriate ongoing royalty rate, "of course, is a matter committed to the sound discretion of the district court." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 n.2 (Fed. Cir. 2008); *see Paice*, 504 F.3d at 1315. A district court must, nonetheless, take care to provide a "concise but clear explanation of its reasons" supporting the rate set. *Amado*, 517 F.3d at 1362 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *Paice*, 504 F.3d at 1315 (same). Ongoing royalties are determined based on the assumption that the parties engage in a post-verdict negotiation, with the jury's damages award as a starting point:

> Because the Court is using the jury's determination of a . . . royalty rate . . . as a starting point, the Court focuses on any new evidence that was not before the jury and additionally any changed circumstances (other than willfulness) between a hypothetical negotiation that occurred [when infringement began] (which the jury determined) and a hypothetical negotiation that would occur . . . after the judgment (which this Court is determining).

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 647 (E.D. Tex. 2011), *aff'd*

*sub nom. Mondis Tech. Ltd. v. Innolux Corp.*, 530 F. App'x 959 (Fed. Cir. 2013);[6] *see Fresenius*

*USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) (instructing district court on

remand to determine royalty that would result from a post-verdict hypothetical negotiation

between the parties); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL

6687122, at *4 (N.D. Cal. Nov. 25, 2014) ("Courts have used the *Georgia-Pacific* factors to

evaluate a post-verdict hypothetical negotiation for ongoing royalties.").   In this case, the

Verdict's reasonable royalty rate for past damages, that is, $102.54 per infringing unit, shall set

the floor for negotiations.  *See Mondis*, 822 F. Supp. 2d at 647, n.8; *Telcordia*, 612 F.3d at 1377

("[T]his court gives 'broad deference to the conclusions reached by the finder of fact.'") (quoting

*Monsanto Co. v. McFarling*, 488 F.3d 973, 981 (Fed. Cir. 2007)).

Rather than evaluate a post-verdict hypothetical negotiation, however, the Court finds

that the best course is to require that the parties engage in an actual one.  *See Paice*, 504 F.3d at

1315 ("[T]he district court may wish to allow the parties to negotiate a license amongst

themselves regarding future use of a patented invention before imposing an ongoing royalty.").

Following this guidance, the Court will order the parties to attend mediation in order to negotiate

the terms of a license, within the framework of the *Georgia-Pacific* factors,[7] as to post-judgment

---

[6] *See Paice*, 504 F.3d at 1316 ("[T]he fact that monetary relief is at issue in this case does not, standing alone, warrant a jury trial.")

[7] *Georgia-Pacific* factors: "1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.  2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.  3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.  4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.  5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.  6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.  7. The duration of the patent and

infringement of the '545 Patent.  At this stage, all additional relief requested by Arctic Cat, including the imposition of a periodic accounting, must be denied, pending the outcome of the parties' licensing discussions.

### IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. BRP's Renewed Motion for Judgment as a Matter of Law or for a New Trial, **ECF No. [169]**, is **DENIED**.

2. Arctic Cat's Motion for Supplemental Damages, Ongoing Royalty, and Periodic Accounting, **ECF No. [160]**, is **GRANTED IN PART AND DENIED IN PART** consistent with this opinion.

3. The parties shall attempt to **NEGOTIATE** terms for future use of the Infringing PWCs.  Towards that end, they are directed to select a mediator and schedule a date, time, and place for mediation **no later than September 2, 2016**.  The parties shall submit a mediation report indicating the results of the mediation within **seven days** of the scheduled mediation.

---

the term of the license.  8. The established profitability of the product made under the patent; its commercial success; and its current popularity.  9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.  10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.  11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.  12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.  13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.  14. The opinion testimony of qualified experts.  15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Case No. 14-cv-62369-BLOOM/Valle

4. **No later than November 14, 2016**, the parties shall file a joint report

indicating the negotiated terms of any licensing agreement reached.

**DONE AND ORDERED** in Miami, Florida, this 12th day of August, 2016.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record

18