ARCTIC CAT INC.,

      Plaintiff,

v.

BOMBARDIER RECREATIONAL
PRODUCTS, INC., and BRP U.S. INC.,

      Defendants.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Bombardier Recreational Products, Inc. and BRP U.S. Inc.'s (together, "BRP") Motion for Summary Judgment and Memorandum of Law, ECF No. [307] ("BRP's Motion"), filed on June 1, 2018 and Plaintiff Arctic Cat, Inc.'s ("Arctic Cat") Sealed Motion for Summary Judgment, ECF No. [310] ("Arctic Cat's Motion"), also filed on June 1, 2018. The Court has reviewed the Motions, the materials filed in support and opposition, record, and the case law, and is otherwise fully advised.

### I.      The Federal Circuit Mandate

The Court writes for the parties and assumes familiarity with the procedural and factual background of this patent infringement case. On March 19, 2018, the Federal Circuit issued its mandate in the appeal of this matter following a jury trial. ECF No. [274]; *see also Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017). In its opinion, the Federal Circuit affirmed this Court's denial of judgment as a matter of law that the patent claims asserted by Arctic Cat would have been obvious, that the jury-awarded royalty rate should be

vacated, and that BRP did not willfully infringe the asserted claims. *Arctic Cat*, 876 F.3d at 1372. The Federal Circuit further affirmed this Court's orders granting an ongoing royalty and trebling damages. *Id.* at 1372. However, the Federal Circuit vacated that portion of the Court's order denying judgment as a matter of law as to marking under 35 U.S.C. § 287 and remanded for a new trial, finding that this Court erred when it failed to hold that "[t]he burden of proving compliance with marking is and at all times remains on the patentee." *Id.* at 1367, 1372.

In reviewing the issue of marking, the Federal Circuit held that "an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id.* at 1368. The Federal Circuit found that BRP had satisfied the "low bar" of the burden of production by producing evidence of the licensing agreement between Honda and Arctic Cat showing Honda's license to practice "Arctic Cat patents that patently cover Arctic Cat's Controlled Thrust Steering methods, systems and developments" and identifying fourteen Honda personal watercrafts ("PWCs") from three versions of its Aquatrax series sold between 2002 and 2009 which allegedly practiced the patents at issue. *Id.*

The Federal Circuit found, however, that once BRP had satisfied this burden of production, the Court should have required the patentee, here, Arctic Cat, to prove compliance with § 287(a). "Arctic Cat, therefore, did not have a fair opportunity to develop its case regarding the Honda PWCs at trial." *Id.* at 1369. Accordingly, the Federal Circuit vacated this Court's judgment as to marking "so that Arctic Cat has an opportunity to proffer evidence related to the identified Honda PWCs." *Id.* The Federal Circuit remanded for new trial and left the issue of additional discovery to the discretion of this Court. *Id.* at 1369, 1369 n.2.

After issuance of the mandate, the Court entered an order requiring the parties to advise

the Court whether the parties believed any additional discovery was necessary, and whether the parties planned to file any pretrial motions. In addition, the Court required the parties to submit concise statements of the issues remaining for remand. *See* ECF No. [275]. The parties thereafter complied, filing the Joint Scheduling Report, ECF No. [290]; the Concise Statement of Issues filed by Arctic Cat, ECF No. [291]; and the Concise Statement of Issues filed by BRP, ECF No. [293]. Meanwhile, Arctic Cat filed a Sealed Motion for Entry of Modified Judgment and Execution of Partial Judgment, ECF No. [284] ("Judgment Motion"). The Court set a briefing schedule for the Judgment Motion, ECF No. [286], and BRP filed an opposition to the Judgment Motion on April 23, 2018, ECF No. [292]. Arctic Cat replied on April 30, 2018. ECF No. [295]. On May 11, 2018 BRP filed a Motion for Protective Order Regarding Plaintiff's Notice of Deposition, ECF No. [298] ("Motion for Protective Order").

Four days later, the Court entered an order ruling on all pending motions and setting a trial schedule based on the parties' representations in the Joint Scheduling Report and the Concise Statements of Issues. ECF No. [300] ("Omnibus Order"). In the Omnibus Order, the Court noted that the Federal Circuit found that "the only dispute between the parties is whether any of the Honda PWCs was covered by the patent claims at issue." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017). Because the Federal Circuit found BRP had met its burden of production, the burden to show compliance with the marking requirements of Section 287 on remand lay with Arctic Cat. The Court accordingly allowed limited discovery and set a pretrial briefing schedule. The parties engaged in discovery and on June 1, 2018 filed the cross-motions now before the Court. Thereafter, on June 18, 2018, Arctic Cat and BRP both moved in limine, ECF Nos. [323] and [327], and filed a pretrial stipulation, ECF No. [326]. The Court now addresses the motions pending before it.

## II.    LEGAL STANDARD

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion.  *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).   Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. Pro. 56(a).  The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party."  *Miccosukee Tribe of Indians v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247– 48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247–48).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. Pro. 56(c)(1). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A movant must present evidence demonstrating that it can establish the basic elements of his claim.  *Celotex*, 477 U.S. at 322. After the nonmoving party has responded to the motion for summary judgment, a court must

grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Thus, "[a] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 249) (emphasis added).

As before the Court here, "cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Georgia State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345–46 (11th Cir. 2015). In particular, where "the parties respond[ ] to each respective summary judgment motion with disputes as to the 'undisputed' facts, add[ ] 'material facts' of their own, and then repl[y] with subsequent objections to the other party's additional facts," the mere filing of cross motions for summary judgment is not conclusive. *Id.* Thus, where the parties disagree as to the facts, summary judgment cannot be entered unless one of the parties meets its burden of demonstrating that "there is no dispute as to any material facts with the evidence and all inferences drawn therefrom viewed in the light most favorable" to the other party. *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

III.    **THE MOTIONS**

    a.  **BRP's Motion for Summary Judgment**

BRP moves for summary judgment to preclude Arctic Cat from seeking any damages prior to the filing of this action on October 16, 2014 based on Arctic Cat's failure to mark the products at issue and failure to provide actual notice pursuant 35 U.S.C. § 287. As to marking, BRP states that, after limited discovery on remand, Arctic Cat has conceded that it cannot

demonstrate that the unmarked Honda products identified by BRP do not practice the '545 and '969 patents. Thus, BRP argues that based on this alone it is entitled to summary judgment on the issue of failure to mark. ECF No. [307] at 5.

Second, BRP argues that based on stipulations entered into by the parties before trial, there is no genuine issue of material fact regarding both constructive and actual notice. *Id.* at 3. Specifically, BRP states that the parties entered into the following stipulations before trial:

> (1) "On or about February 15, 2002, Arctic Cat and Honda entered into a license agreement that included . . . both the '545 Patent and the '969 Patent";
>
> (2) Arctic Cat "agreed to a license that did not include a marking requirement";
>
> (3) Honda sold fourteen models of Aquatrax PWCs in the United States;
>
> (4) Arctic Cat "did not make any effort to ensure Honda marked the PWCs that it sold with the patent number of the '545 Patent, '969 Patent, or any related patents."
>
> (5) Arctic Cat "first gave BRP actual notice of infringement of the '545 Patent and the '969 Patent on October 16, 2014, when it filed its complaint in this lawsuit."

*Id.* at 2; *see also* Statement of Material Facts, ECF No. [308]. As to constructive notice, based on these stipulations, BRP argues that Arctic Cat cannot show that it meets the marking requirement of Section 287 because "Arctic Cat has not shown that the Honda Aquatrax PWCs do not practice the claims of the '545 and '969 patents, and because those products were licensed and unmarked." *Id.* at 8. Regarding actual notice, BRP argues that Arctic Cat has not met its burden to show it provided actual notice of infringement to BRP prior to October 16, 2014 when it filed this lawsuit. *Id.* at 10. BRP argues that the jury's finding of willfulness has no effect on whether BRP was actually on notice of infringement. *Id.*

In opposition, Arctic Cat makes two arguments asserting that it should not be limited to damages as a matter of law to those incurred after October 16, 2014. First, Arctic Cat urges that BRP's Motion must be denied as Arctic Cat is entitled to damages from the date that Honda stopped selling the unmarked PWCs, that is, September 6, 2013. ECF No. [317] at 5. Arctic Cat argues that during the period between September 6, 2013 and October 16, 2014, Arctic Cat could not have violated Section 287's marking requirement since Honda sold no unmarked products. Thus, Arctic Cat is due damages during this period because there was no marking violation. *Id.* at 7. Arctic Cat additionally argues that it is entitled to all is pre-suit damages dating back to October 2008 based on the jury's finding of willfulness. *Id.* at 8.

### b. Arctic Cat's Motion for Summary Judgment

Arctic Cat also moves for summary judgment arguing that there are no genuine issues of material fact regarding its entitlement to pre-suit damages on two separate theories which mirror its theories in opposition to BRP's Motion. First, Arctic Cat argues that even if it failed to comply with the marking requirements of Section 287 and even if it did not give actual notice of the infringement to BRP until October 16, 2014, Arctic Cat is due all its pre-suit damages from October 2008 onward based on the jury's finding of willfulness. In making this argument, Arctic Cat argues that the Federal Circuit's decision in *Amsted Industries Inc. v. Buckeye Steel Casting Co.*, 24 F.3d 178 (Fed. Cir. 1994), which held that actual notice under Section 287 requires an affirmative communication or notification by the patentee, was wrongly decided. Arctic Cat argues that this Court should not follow this binding precedent and its progeny. *Id.* at 13-14.

In the alternative, Arctic Cat argues that it is entitled to is pre-suit damages from September 6, 2013 onward—the date on which Honda stopped selling the unmarked PWCs— because after that date, there was no longer any products to be marked and therefore no need to

comply with the marking requirements of Section 287.

BRP opposes Arctic Cat's Motion for Summary Judgment. ECF No. [314]. First, it argues that the Court should reject Arctic Cat's "invitation to ignore controlling law and Arctic Cat's own binding stipulation" in order to find that Arctic Cat is due all its pre-suit damages from October 2008 onward. *Id.* at 5. Further, BRP argues that Arctic Cat cannot avoid the marking requirements of Section 287 because Honda ceased to sell the unmarked PWCs. Rather, once the unmarked products are produced, BRP argues that the only cure is actual notice, which the parties stipulated occurred on October 16, 2014.

## IV.    THE MATERIAL UNCONTROVERTED FACTS ON REMAND

While the parties have filed lengthy motions in support of their cross motions for summary judgment, their Statements of Material Facts are brief and tailored to the narrow marking issue before the Court on remand. The following facts are not in dispute unless stated otherwise:

Arctic Cat developed an off-throttle steering system for PWCs and secured seven patents for the technology in 1999, including two at issue in this case, the '545 and '969 patents. ECF No. [310] at 8-9; ECF No. [326] at 6. On February 15, 2002, Arctic Cat entered into a licensing agreement with Honda that included the '545 and '969 patents. ECF Nos. [308] ¶¶ 1-2; [318] ¶¶ 1-2. The license agreement contained no marking requirement, and Arctic Cat made no effort to ensure that Honda marked the PWCs that it sold. ECF Nos. [308] ¶ 4; [318] ¶ 4. Thereafter, Honda sold at least fourteen models of PWCs in the U.S. which practiced the '545 and '969 patents. ECF Nos. [308] ¶¶ 2, 14; [318] ¶¶ 2, 14. These personal watercrafts were unmarked. ECF No. [310] at 9. Arctic Cat states that Honda stopped manufacturing in 2009 the unmarked personal watercraft which practiced the patents and stopped selling them in 2013. ECF No.

[311] at 2. Arctic Cat further states that Honda has no unsold inventory of these personal watercrafts. *Id.* BRP disputes that Honda stopped manufacturing the PWCs that practiced the patents at issue in 2009, that Honda ceased selling those PWCs in 2013, and that Honda has no unsold inventory of these PWCs.

Although Arctic Cat discussed licensing the patents with BRP, the parties never entered into a license agreement. *Id.* at 10. In the meantime, BRP developed its own off-throttle steering system that, after a jury trial, was found to have infringed on the '545 and '969 patents. While the record supports that BRP consulted both internally and externally regarding whether its system may have infringed on the '545 and '969 patents, Arctic Cat did not affirmatively communicate to BRP about the alleged infringement until it filed this lawsuit on October 16, 2014. ECF Nos. [308] para 8-9; [318] 8-9; ECF No. [1].

## V.    ANALYSIS

### a.  The Marking Statute

A patentee can only recover damages in an infringement suit for those acts of infringement that occurred after the patentee gave the alleged infringer "notice of infringement." 35 U.S.C. § 287(a).[1] "Patentees, and persons making, offering for sale, or selling within the

---

[1] Section 287(a) provides in pertinent part as follows:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat", together with the number of the patent . . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented" by "either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . ." *Id.* While permissive, marking under the statute serves three related purposes. They are "1) helping to avoid innocent infringement; 2) encouraging patentees to give notice to the public that the article is patented; and 3) aiding the public to identify whether an article is patented." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1383 (Fed. Cir. 2017) (quoting *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)). Thus, the marking statute "protects the public's ability to exploit an unmarked product's features without liability for damages until a patentee provides either constructive notice through marking or actual notice." *Id.* (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)).

Marking is not mandatory. *Rembrandt*, 853 F.3d at 1383. If the patentee—or its licensee—fails to mark, the patentee's damages are foreclosed unless the patentee demonstrates that "the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice." 35 U.S.C. § 287(a); *see also Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1536 (Fed. Cir. 1993) (footnote omitted) (citing *Gen. Elec. Co. v. Sciaky Bros.*, 304 F.2d 724, 726 (6th Cir. 1962) ("In view of General Electric's failure to mark its products as required by statute, or to give any notice of infringement, it could not, in any event, recover damages for infringements occurring prior to the filing of the action for infringement." (citations omitted))); *see also Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1563 (Fed. Cir. 1994) (noting "[s]ince Conopco did not mark its product with the '179

patent number, defendants are not liable for patent infringement damages prior to the date they had actual notice of the '179 patent").

Actual notice under Section 287(a) requires "an affirmative act on the part of the patentee which both identifies the patentee and informs the defendant of infringement." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed.Cir.1994); *see also Rosebud LMS Inc. v. Adobe Sys. Inc.*, 812 F.3d 1070, 1074 (Fed. Cir. 2016) (quoting *Amsted*, 24 F.3d at 187) (contrasting the "proof that the infringer was notified" language of Section 287(a) with the language of Section 154(d) which requires only "actual notice"). More than simply demonstrating the alleged infringer had some notice, "Section 287(a) explicitly requires an act of notification" by the patentee which contains "sufficient specificity [to convey that] the patent holder believes that the recipient of the notice may be an infringer." *Rosebud*, 812 F.3d at 107; *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). This requirement ensures "that the accused infringer knew of the adverse patent and the alleged infringement during the period in which its liability accrues." *SRI*, 127 F.3d at 1470. "The correct approach to determining notice under Section 287 must focus on *the action of the patentee, not the knowledge of the infringer.*" *Amsted*, 24 F.3d at 187 (emphasis added); *see also Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008); *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1375 (Fed. Cir. 2007); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327–28 (Fed. Cir. 2001); *Gart v. Logitech, Inc.*, 254 F.3d at 1345. In fact, to determine whether the patentee engaged in an affirmative act to notify the alleged infringer sufficient to satisfy Section 287, "it is irrelevant . . . whether the defendant knew of . . . his own infringement." *Amsted*, 24 F.3d at 187.

Compliance with the marking statute is a question of fact. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). Thus, where it is uncontested that the identified products practicing the patents at issue were unmarked, summary judgment is only properly granted when no reasonable jury could find that "the patentee either has or has not provided actual notice to the 'particular defendants by informing them of his patent and of their infringement of it.' " *Gart*, 254 F.3d at 1339 (quoting *Amstead*, 24 F.3d at 187). "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1365–66 (Fed. Cir. 2017) (citing *Maxwell*, 86 F.3d at 1111). Moreover, "the duty of alleging and the burden of proving either actual or constructive notice is upon the patentee." *Id.* (quoting *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894) (holding "if [the patented units] are not duly marked, the statute expressly puts upon [the patentee] the burden of proving notice to the infringers before he can charge them in damages").

### b. Constructive Notice

Under this standard, Arctic Cat is entitled to calculate its damages from when it constructively notified BRP of the patents by marking its products or when it engaged in an affirmative act to notify BRP of the alleged infringement. As to constructive notice by marking, the parties agree that Arctic Cat and Honda entered into a license agreement that included the '545 and '969 patents, and that the license agreement contained no marking requirement. The parties further do not dispute that Arctic Cat made no effort to ensure that Honda marked the PWCs it sold that practiced '545 and '969 patents, and that Honda sold at least fourteen models of unmarked PWCs. On remand, Arctic Cat specifically concedes that it cannot meet its burden to show that the unmarked Honda PWCs identified by BRP do not practice the '545 and '969 patents. As a licensee, the Honda PWCs which practice the patents at issue fall under the

marking statute, *see, e.g.*, *Amstead*, 24 F.3d at 185; *Maxwell*, 86 F.3d 1111. Thus, taking the facts in the light most favorable to the non-moving party, Arctic Cat cannot demonstrate that the Honda products were marked in accordance with Section 287(a).

### c. Actual Notice

Since Arctic Cat failed to mark the PWCs identified by BRP, Arctic Cat can only recover damages commencing when it provided actual notice to BRP regarding infringement. The parties agree that Arctic Cat first informed BRP of the infringement on October 16, 2014 by filing this lawsuit. The parties further agree that Arctic Cat never provided any affirmative communication or notification to inform BRP of the infringement prior to filing this action. In its statement of material facts, BRP states:

> 8. Arctic Cat has identified no specific charge of infringement communicated to BRP by any specific accused product or device prior to filing this lawsuit.
>
> 9. Arctic Cat has produced no affirmative communication of a specific charge of infringement by a specific accused product or device dated prior to the filing of this lawsuit.

In response, Arctic Cat disagrees with these statements of material fact and clarifies by providing its own material facts:

> Arctic Cat has not identified an affirmative communication from *Arctic Cat* to BRP communicating a specific charge of infringement by a specific accused product or device dated before this suit was filed. But that does not mean that BRP did not have actual notice that its personal watercraft infringed before this suit was filed.

Arctic Cat's material facts end the inquiry. Actual notice under Section 287(a) requires the patentee to provide an "affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Arctic Cat readily admits that prior to filing this suit, it never

provided any affirmative "act of notification" to BRP. *Rosebud*, 812 F.3d at 107. Because the parties agree that the first time Arctic Cat provided any affirmative notice to BRP was October 16, 2014 when Arctic Cat filed this lawsuit, Arctic Cat has failed to meet is burden to show actual notice at any time prior to October 16, 2014. Accordingly, Arctic Cat is statutorily precluded from recovering damages for infringement prior to that date.

Arctic Cat argues in its Motion and in opposition to BRP's Motion that its meets it burden to show actual notice under Section 287 based on both the Court's rulings and the jury's findings of willful infringement. ECF No. [318] at 2-3. Arctic Cat further points to evidence introduced at trial that BRP knew about the '545 and '969 patents and was aware internally about potential infringement. But the reading of the statute that Arctic Cat urges conflates the patentee-centered inquiry of notice under Section 287(a) with the infringer-centered inquiry of willfulness with regard to liability. Moreover, such a reading runs contrary to binding precedent from the Federal Circuit.[2] The actual notice inquiry under Section 287(a) requires the Court to examine the conduct of the *patentee*, regardless of the knowledge or understanding of the infringer. *Amstead*, 24 F.3d at 187. The jury's finding of willfulness does not relieve Arctic Cat of its obligation to mark or notify—neither of which Arctic Cat did prior to October 16, 2014. While Arctic Cat may disagree with the Federal Circuit's holding in *Amstead*, that case and its progeny are binding on this Court. Accordingly, the Court declines Arctic Cat's invitation to disregard binding precedent and to rely on evidence of willfulness to circumvent its affirmative notice requirement under Section 287(a).

Arctic Cat argues in the alternative that it is entitled to pre-suit damages beginning on September 6, 2013. Arctic Cat states that from September 6, 2013 to October 16, 2014 it

---

[2] Arctic Cat admits as much and argues that this Court should not follow binding precedent. *See generally*, ECF No. [310] at 7, 15-20.

complied with the marking requirement of Section 287(a) because Honda sold no products—marked or unmarked—during that time. However, the binding authority Arctic Cat cites in support of this argument falls into two factually distinct categories: instances where no patented products were produced or sold at all, *see, e.g.*, *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), or instances where, after initially failing to mark patented articles, the patentee either began affirmatively marking them or provided affirmative actual notice to the alleged infringer, *see, e.g.*, *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993). Moreover, Arctic Cat cites to no factually similar binding case law in support of this interpretation of Section 287(a).

The Court rejects the extension of Section 287(a) that Arctic Cat urges. Such a holding would run contrary to the statute's purpose to prevent innocent infringement, encourage patentees to give notice to the public that the article in question is patented, and aid the public in identifying whether an article is patented. *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1383 (Fed. Cir. 2017) (quoting *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)). Rather, in order for Arctic Cat to cure its non-compliance with the marking statute, it needed to begin marking the products or provide actual affirmative notice to an alleged infringer. *Am. Med. Sys*, 6 F.3d at 1537. However, on remand, Arctic Cat concedes that it did no such thing. Thus, taking the facts in the light most favorable to the non-moving party, BRP is entitled to summary judgment. Arctic Cat is precluded from seeking damages prior to October 16, 2014.

## VI.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment and Memorandum of Law, **ECF**

No. **[307]**, is **GRANTED.**

2. Plaintiff's Sealed Motion for Summary Judgment, **ECF No. [310]**, is **DENIED.**

3. The parties shall confer and jointly file a proposed modified judgment consistent with this Order by **August 24, 2018.** Should the parties be unable to agree, Arctic Cat shall file its proposed modified judgment by **August 27, 2018.** BRP may thereafter file its proposed modified judgment by **August 31, 2018**.

4. To the extent not otherwise disposed of, all pending motions are denied as **MOOT** and all deadlines are **TERMINATED;**

5. The Clerk of Court shall **ADMINISTRATIVELY CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of August, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record